HENRY W. B. COTTON, trustee, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   December 13, 1905. — March 5, 1906.

Present : KNOWLTON, C. J., MORTON, LORING, & SHELDON, JJ.

*Damages.   Evidence.   Elevated Railway.   Boston Elevated Railway Company. Witness.*

At the trial of a petition under St. 1894, c. 548, for damages caused by the construction, maintenance and operation of the elevated railway of the Boston Elevated Railway Company, the petitioner has a right to ask a witness, qualified by his special knowledge, what he would say of the street on which the petitioner's property was situated as a business street before the operation of the road, and may show that by reason of the construction, maintenance and operation of the elevated railway the opportunities for doing business were affected and that the street was affected as a business street.   The petitioner also can ask a witness, not an expert in real estate, what he has observed as to the conditions of travel on the street in question since the erection of the structure.

At the trial of a petition under St. 1894, c. 548, for damages caused by the construction, maintenance and operation of the elevated railway of the Boston Elevated Railway Company, if it appears that a large hall in a building on the land of

the petitioner was used for charitable purposes and was not let for profit either before or after the construction of the elevated railway, it is within the discretion of the presiding judge to refuse to allow the petitioner to go into the question of the rental value of the hall before and after the elevated railway was built, and to exclude the question " What would be a fair price for the use of the hall during the time it was occupied for these purposes ? "

At the trial of a petition under St. 1894, c. 548, for damages caused by the construction, maintenance and operation of the elevated railway of the Boston Elevated Railway Company, after the presiding judge has given the petitioner permission to exhibit any dust collected from the outside or the inside of the building on the property alleged to be injured, and to give an analysis of the dust showing how much of it is steel and how much of it is mineral dust and in what period of time the dust was collected, it is within his discretion to refuse to allow the jury to make an examination through a microscope of particles of steel and iron collected from the dust by a magnet.

At the trial of a petition under St. 1894, c. 548, for damages caused by the construction, maintenance and operation of the elevated railway of the Boston Elevated Railway Company, the petitioner may show, as bearing upon the market value, after the erection of the respondent's structure, of his land and a brick building thereon with stores on the ground floor, a hall in the upper stories, and a tenement for a janitor in the rear, where such market value has not been established otherwise, that the inhalation of the particles of steel contained in the dust which comes from the operation of the railway necessarily is detrimental to ·health, predisposes a person inhaling the particles to pulmonary affections and probably will affect his general health, and that the noise and vibration caused by the operation of the railway constitute a continuing menace to health and are destructive of the ordinary faculties or senses.

At the trial of a petition under St. 1894, c. 548, for damages caused by the construction, maintenance and operation of the elevated railway of the Boston Elevated Railway Company, the petitioner may show that since the erection of the elevated structure in front of his premises the operation of the surface cars has caused more vibration and a louder noise by reason of the reverberation of the sound from the steel of the elevated structure. Following *Logan* v. *Boston Elevated Railway,* 188 Mass. 414.

At the trial of a petition under St. 1894, c. 548, for damages caused by the construction, maintenance and operation of the elevated railway of the Boston Elevated Railway Company, if the petitioner has testified that after the damage done by the elevated structure the value of his property was only from $7,800 to $10,000, the presiding judge may allow the respondent, for the purpose of contradicting this testimony of the petitioner, to show that after the erection of the elevated structure the petitioner told his brother to employ real estate agents to sell the property and named $17,000 as the price for which he would be willing to sell it, the weight to be attached to this evidence being a question for the jury.

THE following introductory statement is taken from the opinion of the court:

This was a petition brought under St. 1894, c. 548, to recover compensation for damage to the petitioner's estate caused by the location, construction, maintenance and operation of the elevated railway of the defendant corporation.

The land in question was a lot containing 3,819 square feet situate on the corner of Main Street and Baldwin Street in the Charlestown district of the city of Boston; on it there was a brick building with stores on the ground floor and a hall in the upper stories, known as Cotton Hall. A portion of the building in the rear was used as a tenement by a janitor.

The land cost $5,500 and the building, which was erected in 1893, cost $15,300, making a total cost of $20,800. It was opened for occupation in January, 1894. The defendant's railway was opened to the public on June 10, 1901.

The building was erected by Joseph H. Cotton, the father of the petitioner, and was conveyed by him to the petitioner by a trust deed in which a life interest was reserved to the grantor, the petitioner's father. During his life the petitioner's father used the premises in part for certain benevolent and religious purposes. The only compensation he received for such use consisted of voluntary contributions obtained by passing the contribution box at meetings held in the hall, and these contributions all were applied by him to the benevolent and charitable purposes for which they were contributed. At such times as the hall was not in use for such purposes, it was occupied as a meeting place by various organizations, each of which paid a rental for its use. The stores in the lower part of the building were leased to various tenants and the rent of these, together with the rent paid by the various organizations for the use of the hall, were applied by Joseph H. Cotton, after deducting the amount necessary for the maintenance of the building, to benevolent and religious purposes.

The case is here on exceptions taken by the petitioner to the admission and exclusion of evidence.

*H. W. Bragg*, for the plaintiff.

*G. L. Mayberry*, for the defendant.

LORING, J. [After the foregoing introductory statement.] 1. The petitioner asked one of his witnesses who had resided in Charlestown District for thirty-two years, and who qualified as an expert on real estate in the vicinity in question and testified that he was familiar with Main Street, this question : " What would you say of Main Street as a business street before the operation of the road ? " Upon objection of the respondent this

question was excluded. Thereupon counsel for the petitioner offered to show that by reason of the location, erection, maintenance and operation of the elevated railway the opportunities for doing business on Main Street were affected by the operation of the road and it was affected as a business street. Later the petitioner asked another of his witnesses: " What are your observations as to the conditions of travel on Main Street since the erection of this structure; that is, on that part of Main Street from Hancock Square to Sullivan Square (that portion of Main Street upon which the premises in question are situated)? " This question also was excluded.

It was competent to show the character of the street before the erection of the defendant's railway structure with a view to making the jury understand what the effect was of the location, construction, maintenance and operation of the defendant's railway, (which for convenience may be spoken of as the effect of the defendant's structure.)   See *Burt* v. *Merchants' Ins. Co.* 115 Mass. 1, 15; *Williams* v. *Taunton,* 125 Mass. 34, 36; *Logan* v. *Boston Elevated Railway,* 188 Mass. 414.   The only argument in support of the ruling is that the first witness had previously testified " that the elevated road was no benefit whatever to the estate; that when passengers were carried on the surface cars there was an opportunity for merchants to display goods, and that customers frequently stopped at points along Main Street and made purchases, and that under the present conditions passengers are carried through on the elevated structure from Sullivan Square to Thompson Square or *vice versa* without a stop," and that this question related to the rest of the street and for that reason might be excluded by the presiding judge in his discretion.   The defendant cites in support of that contention *Thompson* v. *Boston,* 148 Mass. 387.   We do not think that the witness by the previous answer had stated fully the effect of the structure on the plaintiff's estate, and we are of opinion that the petitioner had a right to ask the question which was excluded for the purpose above stated.   When the similar question was asked of the plaintiff's other witness, no testimony had been given by that witness as to the effect of the defendant's structure on the plaintiff's estate and the reason given for supporting the ruling in case of the first witness fails.   The defendant has

sought to uphold this second ruling on the ground that the witness was not an expert in real estate. But the question was a question of fact as to the conditions existing before the railway was erected, — as part of the petitioner's case which was to show how the erection had affected the plaintiff's estate. The exceptions to the exclusion of both questions must be sustained.

2. The second exception was to the exclusion of this question which was put to another witness called by the petitioner: "I will ask you, Mr. Cotton, what would be a fair price for the use of the hall during the time your father occupied it for these purposes?" The question to be tried was the damage done to the property by the defendant's structure. Had the property been let before and let after the *punctum temporis* in question, the rents received before and after doubtless would have been competent evidence of the damage done, provided it was proved that the difference was due to the structure alone. The premises here had not been let before or after. Under those circumstances it was not the petitioner's right to go into the rental value which might have been obtained before and after. Whether he should be allowed to put in such evidence rested in the discretion of the presiding judge.

3. The next exception is to the refusal of the presiding judge to allow particles of steel or iron caused by the operation of the elevated road, and collected by a magnet within the hall, to be shown to the jury through a microscope. The judge permitted the petitioner " to show any dust which you have collected from this house on the outside or on the inside. I will permit you to give an analysis of that dust showing how much of it is steel and how much of it is mineral dust and in what period of time the dust was collected. I shall not permit that dust to be shown to the jury through a microscope." We are of opinion that the judge could in his discretion refuse to allow the jury to make an examination of the dust through a microscope.

4. The next exception is to the refusal to allow the petitioner to show that the inhalation of these particles of steel is necessarily detrimental to health, predisposes a person exposed thereto to pulmonary affections and is liable to and probably will affect the general health of any person who is brought in contact with them ; and that the noise and vibration caused by the operation

of the railway constitute a continuing menace to health and are destructive of the ordinary faculties or senses. In this connection the presiding judge states: " I do not permit an expert opinion on the effect of noise on health." The defendant's argument in support of this ruling is that " the petitioner was not seeking damages for personal injuries to himself. He did not occupy the premises. The sole question was as to the depreciation in market value of the premises, and that would depend upon the way the ordinary person buying or hiring the premises would look upon the matter, and not upon the apprehensions of a physician." But we cannot accede to this contention. If those living in the neighborhood of such a structure in fact are predisposed to pulmonary affections, and if in fact the structure is a menace to health and is destructive of the ordinary faculties or senses, that is a damage to the premises which would be likely to affect the market value of the premises. What the market value was after the erection of the defendant's structure was not a fact which had been established. It was a matter for expert opinion and was the fact to be determined by the jury. An expert and the jury, in deciding what that market value was after the erection of the defendant's structure, could take these facts, if they are facts, into consideration. We are of opinion that the evidence was competent, and that this exception must be sustained.

5. The next exception is to the exclusion of this question: "You can state what you have noticed with reference to the noise or vibration caused by the surface cars since the construction of the elevated road as compared with such noise before the road was constructed." In connection therewith the petitioner offered to show " that since the erection of the elevated structure through Main Street and in front of the premises of the petitioner the operation of the surface cars had caused much more vibration and a louder noise by reason of the reverberation of sound from the steel structure of the elevated line." The law on this point is settled by *Logan* v. *Boston Elevated Railway*, 188 Mass. 414. Whether the particular question should or should not have been admitted is not material.

6. The defendant has argued the correctness of the ruling made by the presiding judge when one Mason was on the stand.

The petitioner objected to the ruling but did not take an exception.

7.  The presiding judge allowed the defendant to show that after the erection of the elevated structure the petitioner had told his brother (of whose authority there was evidence) to employ real estate agents to sell the property in question, and that in that connection he had named $17,000 as the price for which he would be willing to sell the property.   The petitioner had previously testified that the damage done by the respondent's structure was from $12,000 to $19,000, and that the present value of the estate was from $7,800 to $10,000.   We are of opinion that this evidence as to the subsequent authority to sell for $17,000 was admissible as a statement tending to contradict the previous testimony of the petitioner.   Whether the asking price which an owner sets on his property is evidence of what he thinks it is really worth depends largely on the circumstances under which it is given.   If an owner who did not wish to sell were asked what price would secure his property and were to answer $17,000, it hardly could be contended that it would be any evidence that he thought the property worth that sum.   And even when he states that $17,000 is his asking price in putting his property into the hands of a real estate agent for sale, it might be argued that an asking price was not evidence of what he thought it really worth.   But we are of opinion that it was competent, after the petitioner had testified that the estate was worth $7,800 to $10,000, to show that his asking price was $17,000 when he put it in the hands of a real estate agent for sale.   What weight is to be attached to this evidence was for the jury.   The exception taken to the admission of this testimony must be overruled.

*Exceptions sustained.*