## ABRAMSON v. CITY OF SAN ANGELO.
### No. 9703.

Court of Civil Appeals of Texas. Austin.
March 3, 1948.

Rehearing Denied March 24, 1948.

W. A. Johnson, Sedberry & Williams, and M. E. Sedberry, all of San Angelo, for appellant.

Thos. G. Thigpin, and Glenn R. Lewis, both of San Angelo, for appellee.

HUGHES, Justice.

The City of San Angelo in furtherance of a program to enlarge and improve its system of parks along the course of North

Concho River, which runs through the city in a general north to south direction, brought this suit to condemn five city lots owned by appellant, M. Abramson.

Appellant, dissatisfied with the award made by the special commissioners, appealed to the county court where a jury trial ensued, the result of which was that the aggregate value of the five lots was fixed at $2,000.

Several trial errors and jury misconduct are asserted, all of which will now be considered.

The following testimony of B. F. Snyder, a merchant, was offered by appellant and excluded:

■ That after he had sold his hotel business and in recent months before the trial, he looked around for a place to build himself a building. At the time of the trial he was engaged in the nickelodian business. In looking for a lot, he examined Lots Nos. 4 and 5 of appellant, and they suited him, and he offered appellant $6,000 in cash for the two lots, which the appellant rejected. Witness made no inquiry as to the market value of these lots, but relied strictly on his own judgment as to what they would be worth to him, and he made the offer in good faith.

Appellant, with commendable frankness, cites Stone v. Payne, Tex.Civ.App., Beaumont, 168 S.W.2d 503; 17 Tex.Jur., p. 446; and Sec. 699, McCormick and Ray on Evidence, as adverse authorities. No supporting authorities are referred to.

■ The rule announced by these authorities is that evidence of an unaccepted offer to purchase, made by one not a party to the suit, is inadmissible on the question of value.

We are asked to reconsider and revise this rule. The above authorities disclose that this character of evidence has long and on numerous occasions been excluded by our courts; also that the rule is one of general acceptance in other jurisdictions. Regard for stability of the law as well as our approval of the reasoning upon which the rule is based, force adherence to the rule and the conclusion that no error was committed in excluding the proffered testimony.

Improper jury argument of counsel for the City is assigned as error.

It appears that evidence had been introduced as to prices paid by the City to Bernie Akin and Sam Runkles for lots in the vicinity of appellant's property. The argument complained of, as shown by Bill of Exception, was to the effect that these prices did not necessarily represent their fair market value because the City was about to take these lots, the owners were forced to sell, and the City could afford to pay two or three hundred dollars more to each of these owners than the fair market value, or more than the amount it would have to pay through condemnation proceedings.

This argument was objected to on the ground that there was no evidence that the City had paid Akin and Runkles two or three hundred dollars more than the fair market value of their lots in order to avoid condemnation proceedings.

The trial court qualified appellant's Bill of Exception as follows:

"The argument of the City Attorney, Glenn R. Lewis, is not set forth above with entire accuracy. W. A. Johnson, attorney for defendant M. Abramson, had argued to the jury that the City was not being fair with Mr. Abramson in that it was trying to get his property without paying him as much for the same in comparison with what it had paid to Bernard Akin and Sam Runkles for their properties. In his closing argument Mr. Lewis directed the jury's attention to the argument which Mr. Johnson had thus made and then told the jury in substance that the court had defined the term 'cash market value' as the amount in cash which property will bring when offered for sale by one who wishes to sell but is not compelled to do so and is bought by one who desires to buy, but is under no compulsion to do so; that the Akin and Runkles properties being in the path of the park improvement the City was under a certain compulsion to buy and further to be fair about it Runkles and Akin were faced with the necessity of selling,

in that the City could condemn if the parties could not come to terms; and that the City could afford to pay two or three hundred dollars more to each of said owners than the fair market value rather than have to go through condemnation proceedings. At this point the defendant made his objection and it was overruled, he excepting. Mr. Lewis then concluded his argument on this point by saying, 'For that matter the amount paid under such circumstances might be a few hundred dollars off in either direction from the cash market value."

Appellant cites Texas Employers Ins. Association v. Drayton, Tex.Civ.App., Amarillo, 173 S.W.2d 782, Writ Refused, WOM, and Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, in support of this assignment.

The Barrington case involves jury misconduct. The Drayton case, aside from the announcement of general principles, is of no assistance. We quote Syllabus 10 of 173 S.W.2d 783 to show there can be no comparison between the nature of the argument there made with the argument here:

"Where, in compensation proceeding, employee's counsel, in argument, continued, notwithstanding objections and court's admonitions to jury, to criticise insurer's counsel for introducing competent evidence as to employee's criminal record and there was reasonable doubt as to the effect of such argument on jury, reversal was required."

We believe the argument was legitimate and within the rule that counsel have the right to discuss the evidence and draw their own conclusions, deductions and inferences therefrom.

Forced purchases or sales do not, as the court instructed the jury, form a proper standard for determining market value. The sales of the Akin and Runkles lots were not voluntary in the usual sense of the word as to either buyer or seller. The City was compelled to by if its park program was to proceed, and the owners were compelled to sell in view of the City's right of eminent domain. Whether these facts caused the price paid to be below or above the market value was a fit subject for debate. The City Attorney drew the inference most favorable to his client. That his remarks were argumentative only is unquestionably shown by the statement of Mr. Lewis, fairly made to the jury, that "the amount paid under such circumstances might be a few hundred dollars off in either direction from the cash market value."

Appellant testified and gave his opinion as to the market value of his lots. On cross-examination he was asked what value he had placed on these lots in rendering them to the City for taxation in 1941. Objection was made to this question on the ground that "what he rendered them for at any time has nothing to do with the market value; it is immaterial and irrelevant." This objection was overruled.

Without further objection the City offered in evidence the tax rendition of appellant for the years 1941 and 1944.

Later in the trial appellant orally requested the court to instruct the jury not to consider these renditions for any purpose except as they might bear upon the credibility of appellant as a witness and the weight to be given his testimony. This motion was overruled. Appellant then orally requested the court to instruct the jury that these tax renditions "be not considered by the jury upon the issue of market value of the property involved in this suit." This motion was refused.

Contending that there was error in the above actions of the court, appellant cites Jackson v. Goldberg, Tex.Civ.App., San Antonio, 283 S.W. 860, a suit for specific performance of a contract, in which the court held that the amount for which lands have been rendered by the owner for taxes affords no basis for, or criterion by which to measure the value of land. · In support of this holding the court cited Railway v. Kell, 4 Willson Civ.Cas.Ct.App. § 150, 16 S.W. 936; McLane v. Paschal, 74 Tex. 20, 11 S.W. 837; City of San Antonio v. Diaz, Tex.Civ.App., 62 S.W. 549; International & G. N. Railway v. Goswick, Tex.Civ.App., 83 S.W. 423, affirmed 98 Tex. 477, 85 S.W. 785, and Payne v. Beaumont, 245 S.W. 94, Writ Refused.

Of these cases only the Kell case was a condemnation suit.

In that case the court held similar evidence inadmissible, but stated that if there was error in excluding the evidence it was harmless.

In McLane v. Paschal, the assessment offered was made by the taxing authority and not by a party. This was excluded on the ground that it was an ex parte statement of a third party. Also was excluded a list of property, upon which the assessment was based, made by the son of the party against whom it was offered.

In the Diaz case, similar evidence was held properly excluded on the authority of McLane v. Paschal, supra.

In the Goswick case the Court of Civil Appeals apparently held similar evidence properly excluded. Writ of error was granted by the Supreme Court and it had this to say about the holding of the Court of Civil Appeals:

"When we granted the writ of error, we were under the impression that the plaintiff, in testifying to his earning capacity before his injuries, had sworn that he had accumulated certain property, both real and personal, and that it was of a certain value, and that thereupon counsel for defendant asked him, in substance, at what value he had rendered this property for taxation. The court sustained an objection to the testimony, and we thought this was error. But we find that we were mistaken as to the state of the record—a mistake induced by the opinion of the Court of Civil Appeals and by the application for the writ of error. It appears from the transcript that the testimony of the plaintiff as to his property and its value was not given upon his examination in chief, but was drawn out upon his cross-examination by the defendant. The testimony was merely as to the property he possessed at the time of the trial, and there was nothing to show when or how he acquired it. It seems to us, therefore, that this matter was wholly irrelevant to any issue in the case. It follows that an inquiry as to the value of the property as rendered for taxation was still more remote and equally irrelevant. We think the court did not err in excluding the testimony."

In Payne v. Beaumont, supra, the court held that "assessment rolls" are not competent evidence on a question of value. Whether a party to the suit was connected with making the assessment rolls is not shown.

■ This court held in State v. Doom, Tex.Civ.App., 278 S.W. 255, 256 (a condemnation suit):

"It is well settled that in condemnation proceedings evidence of the value for which the property is rendered for taxation is proper for the consideration of the jury as an admission against interest, and as tending to show market value, where the evidence conflicts on that issue. Boyer et al v. St. L., S. F. & T. Ry. Co., 97 Tex. 107, 76 S.W. 441; Trinity & B. V. Ry. Co. v. Orenbaum, Tex.Civ.App., 173 S.W. 531; Crystal City & U. Ry. Co. v. Isbell, Tex. Civ.App., 126 S.W. 47; Gulf, C. & S. F. Ry. Co. v. Koch, Tex.Civ.App., 144 S.W. 1035."

Other authorities holding this character of evidence admissible in condemnation cases are: Burton Lbr. Corp. v. Houston, 45 Tex.Civ.App. 363, 101 S.W. 822, 823, Writ Denied; Joyce v. Dallas County, Tex. Civ.App., Beaumont, 141 S.W.2d 745; Wise v. City of Abilene, Tex.Civ.App., Eastland, 141 S.W.2d 400, Writ Dismissed C. J.; and West v. State, Tex.Civ.App., Eastland, 150 S.W.2d 363.

■ We believe the rule stated by this court in State v. Doom, supra, and reiterated in the cases last above cited, to be correct, and decline to apply the holding in Jackson v. Goldberg, supra, to a condemnation suit.

Appellant sought a new trial on the ground of jury misconduct. On the hearing it was shown that one of the jurors, after being sworn and during the trial, had inspected the property in suit. He mentioned this to other jurors, but expressed no opinion upon what he had seen. Also, that another juror went to the property for the purpose of "swapping" cars. He saw the property but did not inspect it. He told other jurors he had seen the property.

■ A jury is not permitted to view the property or premises involved in a suit. Woodrum Truck Lines v. Bailey, Tex.Com

App., 57 S.W.2d 92. The action of one juror in inspecting the property was misconduct. Republic Ins. Co. v. Hale, 128 Tex. 616, 99 S.W.2d 909.

■■ The question of probable injury to the complaining party from jury misconduct is one of law for the courts. City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259. In determining this question we are entitled to look at the entire record. Rule 327, Texas Rules of Civil Procedure.

■ The property is located in the heart of San Angelo. Anyone at all familiar with the City would know, when informed of its general location, the nature of the terrain and its proximity to well known business establishments. J. A. Simpson, Tom Green County Surveyor, testified for appellant and a map prepared by him was introduced in evidence. This map shows the location, dimensions, and elevations of the property above the river. A photograph of the property is also in evidence. Several witnesses testified to the location of the lots and the rocks, holes, fills, banks, brush and trash on them. No material discrepancy appears in any of this evidence.

The two jurors saw only what the undisputed evidence described.

Viewing the record as a whole, we are of the opinion that no probable injury to appellant resulted from the misconduct of the jurors.

■ Appellant's last assignment is to the effect that the verdict of the jury, fixing the value of his property at $2,000, is against the great preponderance of the testimony.

Appellant has owned these lots for about twenty years. He acquired them at a judicial sale for about $500, and has rendered them for taxation at a total value of $50. The assessed taxable value is $350.

Several qualified witnesses gave varied opinions as to value, to-wit:

Appellant's Witnesses.

| | | |
|---|---|---|
| Findlater | $ 5,000 to $6,000 | |
| Appellant | $12,000 for two north lots | |
| Carter | $16,000 | |
| Sewell | $ 6,500 for three north lots | |

City's Witnesses.

| | |
|---|---|
| Brown | $ 750 |
| Turner | $1,750 |
| Little | $1,750 |
| Logan | $1,500 to $2,000 |

Appellant's valuation is, of course, discounted because of his interest.

Mr. Findlater's opinion is affected by the fact that he owns three lots east and west directly across Irving Street from appellant's property.

The opinions of Carter and Sewell were so far apart that the jury evidently was not much impressed with either.

■ The weight to be given the testimony of these witnesses was solely within the province of the jury. The evidence would have justified a higher verdict, but we cannot say, as a matter of law, that the verdict rendered is against the great preponderance of the evidence.

The judgment of the trial court is affirmed.

Affirmed.