EFFIE L. HANKS AND HUSBAND, E. E. HANKS V. GULF, COLORADO & SANTA FE RAILWAY COMPANY.

No. A-6688. Decided January 14, 1959.
Rehearing overruled February 18, 1959.
(320 S.W. 2d Series 333)

*Earl E. Coleman* and *Royce Whitten,* both of Dallas, for petitioners.

*McLeod, Mills, Shirley & Alexander,* of Galveston, *Fred Minor, John Sullivan, T. B. Davis,* all of Denton, *Burford, Ryburn & Ford,* and *Robert E. Burns,* all of Dallas, for respondent.

MR. JUSTICE SMITH delivered the opinion of the Court.

This is a condemnation suit brought by the respondent under our laws of eminent domain against the petitioners for a right of way out of and over and across a 61.22-acre tract of land adjoining the city limits of the City of Denton. We have but one question to decide, which is: Was certain testimony hereinafter more specifically referred to, offered by the respondent and excluded by the trial court, admissible, and if so, did the exclusion thereof constitute such a denial of the rights of respondent as was reasonably calculated to cause and probably did cause the rendition of an improper judgment? We have concluded that such proffered testimony was inadmissible, therefore, the exclusion thereof could not be prejudicial.

In the trial court the parties entered into certain stipulations thereby reducing the controversy to only the question of the market value of the land to be taken and the market value of the remaining land. Proper issues were submittd to a jury for determination. The jury found that the value of the tract of 3.22 acres taken on December 23, 1954, was the sum of $2437.00; that the value of the remaining tract of 58 acres immediately before the taking was $43,500.00; and the value of the remaining land immediately after the taking was $29,000.00. Based upon such findings, the trial court rendered judgment for $16,-937.00, together with interest at the rate of 6 per cent on the sum of $6,437.00, being the portion of the judgment not deposited in the registry of the court on December 23, 1954. On Appeal perfected by the respondent, the Court of Civil Appeals reversed and remanded the case for a new trial. 308 S.W. 2d 165. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

In view of respondents' insistence both by cross point and argument that this Court is without jurisdiction and that petitioners' application should be dismissed for want of jurisdiction, we deem it necessary to dispose of the question. Respondent advances the theory that since the excluded evidence hereinafter discussed was offered by the respondent and not by the petitioners, and since the trial court's rulings did not in any

particular prevent the petitioners from fully developing their case, and since the excluded evidence was only defensive in nature, such evidence did not control and the case did not "turn" on the evidence in question. The respondent invokes the well settled rule that where a complaint is made as to the admission or exclusion of evidence, it will not be said to concern a matter of substantive law unless the evidence "controls" the case, or the case "turns" on the evidence in question. The contention is made that it is only in situations where, because of the ruling of the trial court, the party is prevented from making out a case that the question concerning the admissibility of evidence becomes a matter of substantive law, citing the case of Allen v. Pollard, 109 Texas 536, 212 S.W. 468, in support of such contention.

We do not agree with the position thus taken by the respondent. It is true that respondent, who was the appellant in the Court of Civil Appeals, presented only three points of error. Each of these points complained that the trial court erred in refusing to permit appellant-respondent to introduce certain testimony. The Court of Civil Appeals sustained such contention and reversed and remanded the cause for a new trial. Unquestionably, the court made the evidence controlling of the case, and the judgment of the court "turned" on the evidence in question. It reversed and remanded the cause for a new trial. Thus, that court by its action made the evidence controlling of the case, and the judgment of that court "turned" on the evidence in question. It is well settled by the decisions of this Court that if the evidence necessarily controls the case, or if the case turns on the evidence in question, this Court has jurisdiction. See Merchants Cotton Oil Company, Inc. v. Acme Gin Company, 121 Texas 91, 42 S.W. 2d 777; Smith v. Butcher, 110 Texas 617, 223 S.W. 166; Kansas City, M. & O. Railway Company v. Torres, Texas Com. App., 57 S.W. 2d 1099. In the Acme Gin Company case, supra, the court, after stating that the only question presented by the application for writ of error was one of admissibility of evidence, disposed of the jurisdictional question by holding that "* * * Since the evidence excluded does not necessarily control the case * * *, we are compelled to dismiss the application for want of jurisdiction. * * * " In the instant case, we have held that the evidence is controlling and that the judgment of the Court of Civil Appeals turned on the evidence in question. In all of these cases, including the instant case, this Court had and has jurisdiction to determine the question of whether or not the excluded evidence was controlling, or whether the case "turned" on the evidence. We hold that this Court has

jurisdiction to consider the questions presented in the petition for writ of error.

Turning now to the merits, we have carefully considered a 53-page bill of exception made up largely of the testimony of Mr. Hanks taken out of the presence of the jury and statements of the attorneys as well as comments and rulings of the trial judge. The excluded testimony was offered by the respondent in an effort to refute the testimony given by Mr. Hanks as to the value of the remaining tract of land before and after the taking.

Mr. Hanks testified before the jury that in his opinion the fair cash market value of the land on December 23, 1954, in Denton County, Texas, immediately before the railroad went over and across his land was the sum of $1000.00 per acre or a total of $58,000.00; that the fair market value of the same land after the taking was the sum of $500.00 per acre or a total of $29,000.00 for the 58 acres. The record reflects that the excluded testimony involves two separate and distinct alleged oral offers to sell the remaining land. One such offer came about when a Mrs. Brown, a real estate agent, telephoned Mr. Hanks and in response to her inquiry, he informed her that if her prospective purchaser would take the entire 58 acres, he would sell for $2000.00 per acre. We have concluded that the trial court did not exclude this testimony. Therefore, it is unnecessary for us to pass upon the question of whether or not the conversation between Mrs. Brown and Mr. Hanks was admissible. It is sufficient to say that the attorneys stated to the court that it was their desire to offer testimony and to cross examine Mr. Hanks relative to whether or not he had ever made a statement that the market value of his remaining land was $1000.00 per acre, or $1250.00, or was in excess of or far in excess of $500.00 per acre, the value given by Mr. Hanks upon the trial.

The bill of exception reflects that the trial court ruled that the attorneys for respondent would be permitted to fully cross-examine Mr. Hanks with reference to his testimony on value. The Court stated "You have the right of full cross-examination with reference to the figures he has said on the land taken and the remainder both prior to and subsequent to the condemnation. * * * So I think that as far as the right of cross examination before the jury with reference to values, of course you would have that right and I will sustain it." The respondent made no effort to introduce such evidence before the jury through cross-examination of Mr. Hanks or otherwise. The other offer to sell, first for $1000.00, and later for $1250.00 per acre, was in con-

nection with an oral offer to purchase submitted by Fred Rayzor in behalf of his brother, Newton Rayzor. The respondent offered to prove this transaction by the testimony of a real estate agent, Mr. Ritchie, and through cross-examination of Mr. Hanks. We shall not attempt to set out in this opinion all the testimony offered in connection with this transaction as reflected by the bill of exception. The testimony adds up to an oral offer to purchase by Newton Rayzor, without any showing of written authority to Fred to make the offer. The evidence does not even tend to prove value. At the very most, the offer of Rayzor to pay $1250.00 per acre for the remaining land was an unaccepted offer to purchase. It was merely the opinion as to the value Rayzor placed upon the land. Such evidence, if offered through the testimony of Mr. Rayzor would be inadmissible, much less is such testimony admissible when offered through a third party.

The trial court in sustaining petitioners' objection to the testimony regarding the Rayzor-Hanks transaction said: "* * * I am going to sustain Mr. Coleman's [petitioners' attorney] objection to the proposal to introduce evidence regarding an offer of Mr. Hanks. Because I think from what I heard yesterday [out of the presence of the jury] it shows an offer on the the part of the defendant to sell land for $1250 an acre. And it is not an admission * * * it is not admissible on the question of market value. And there was, of course, no written offer from the prospective buyer, and there was no offer at all that I heard of. There was no meeting of the minds between the buyer and the seller; that the buyer, Newton Rayzor, wasn't present, and apparently it was contemplated that Mr. Hanks' offer was to be taken by Mr. Minor or Mr. J. Fred Rayzor and submitted to the prospective buyer in some other town. There was no evidence of a bona fide offer on the part of the prospective buyer. And it is not shown that it was an assertion of market value on the part of Mr. Hanks. He has testified in this case that the market value was $500, and now he was saying in that office that he will take 1250. I don't really feel like the statements are contradictory. If he had positively said over there in that conversation that the market value was 1250. 'I won't take a penny less,' or 'It is worth 1250,' we might get into a problem of contradictory statements. But now as I see it, it is still an unaccepted offer and not a contradictory statement, and therefore inadmissible on the question of market value. * * *" Then, again, and still after the presentation of additional evidence out of the presence of the jury, the trial court in continuing to sustain the objection, said: "Gentlemen, I think this amounts to quite an extended period of negotiations relative to an unaccepted

offer, and I am not going to permit you to introduce that evidence before the jury for that reason." The exclusion of such evidence is supported by such authorities as Hine v. Manhattan R. Co (1892), 132 N.Y. 477, 30 N.E. 985, 15 L.R.A. 591; Sharp v. United States, 191 U.S. 341; 24 Sup. Ct. 114, 48 L. Ed. 211; Abramson v. City of San Angelo, Texas Civ. App., 210 S.W. 2d 476, wr. dism. See also 7 A.L.R. 2d 785, 787.

The case of Hine v. Manhattan R. Co., supra, assigns reasons why an unaccepted offer to purchase is not competent evidence upon the issue of market value of the land. The court, among other things, says: "Such market value may be shown by the testimony of competent witnesses but not by an offer. In the first place the evidence * * * is objectionable, because it places before the court or jury an absent person's declaration or opinion as to value, while depriving the adverse party of the benefit of cross-examination. The highest value at which an offer, standing alone, can be estimated is, that it represents the opinion of him who makes it as to the worth of the property. Nevertheless, the assertion that he offered to part with his money, might give to such hearsay opinion more weight with the jury, than an opinion given by a witness before them, not thus supported. While, notwithstanding, his opinion was backed by a promise to pay money, which was not enforceable, he may not have been competent in a legal sense to express an opinion on the subject. If he was, other reasons may have prompted the offer than an expectation of actually becoming the purchaser; or of obtaining it at its market value."

In discussing the evidence involved in the case of Sharp v. United States, supra, the court said that such evidence was of a nature "entirely too uncertain, shadowy, and speculative to form any solid foundation for determining the value of the land. * * * If the offer were admissible, not only is it almost impossible to prove (if it exists) the lack of good faith in the person making the offer, but the circumstances of the parties at the time the offer was made as bearing upon the value of such offer may be very difficult, if not almost impossible to show. To be of the slightest value as evidence in any court, an offer must, of course, be an honest offer made by an individual capable of forming a fair and intelligent judgment, really desirous of purchasing, entirely able to do so, and to give the amount of money mentioned in the offer, for otherwise the offer would be but a vain thing. Whether the owner himself, while declining the offer, really believed in the good faith of the party making it, and in his ability and desire to pay the amount offered, if such offer

should be accepted, or whether the offer was regarded as a mere idle remark, not intended for acceptance, would also be material upon the question of the bona fides of the refusal. * * *"

The testimony excluded by the trial court in the instant case could be of no probative value or aid to the trier of the facts in determining the market value of the land involved. "Oral and not binding offers are so easily made and refused in a mere passing conversation, and under circumstances involving no responsibility on either side, as to cast no light on the question of value. It is frequently very difficult to show precisely the situation under which these offers were made. In our judgment they do not tend to show value." Sharp v. United States, supra.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Justice Hamilton not sitting.

Opinion delivered January 14, 1959.

MR. JUSTICE NORVELL, joined by Justices CALVERT, WALKER and GREENHILL, concurring.

The Court of Civil Appeals opinion proceeds upon the theory that Hanks' offer to sell his tract of land for $1,250.00 per acre was admissible as an admission. The 53-page bill of exceptions is not free from confusion.[1] It consists of questions propounded

---

1.—For example, it is not clear whether the negotiations between the prospective purchaser Newton Rayzor, represented by his brother, Fred, related to a firm agreement to pay $1,250.00 per acre or simply an option whereby Rayzor could acquire the property at that price should he desire to do so within a seven-day period. Curtis Ritchie in his testimony taken for the purpose of the bill, seems to have given conflicting versions, viz:

"Q. He (evidently Fred Rayzor) was wanting Mr. Hanks to give him a 7 day option on it, isn't that correct? A. No. He didn't ask Mr. Hanks to give him nothing. Mr. Hanks —

Q. Well, you did? A. No I didn't ask Mr. Hanks to give him no option. He just merely said that himself.

Q. That he would give a 7 day option on it. A. Yes, Sir.

Q. And that is what he failed to give them, isn't that right? He refused to sign it, or he walked out and refused to sign it. A. There wasn't nothing said about the option up there in Fred Minor's office.

Q. Why didn't you testify that was what he was fixing to draw up? A. That day up there in Fred Minor's office there wasn't a word said about the 7 day option. We just went up there to fix the contract and buy the place.

Q. All right, and give 7 days for Mr. Rayzor to either accept it or reject it? A. Yeah.

Q. And that is what I complained about wasn't it; isn't that right, Curtis? That it was one-sided, don't you remember that? A. No. It was just a straight flat sale across deal on that 58.34 acres of land out there, figured on a 58 acre basis."

to and answers given by Curtis Ritchie, a real estate broker and witness for respondent and the petitioner, E. E. Hanks. The trial court considered that the problem presented was one relating to the admissibility of an unaccepted offer to purchase. If this analysis be accurate, then the ruling of the court was correct under the authorities. Sharp v. United States, 191 U.S. 341, 24 Sup. Ct. 114, 48 L. ed. 211; Abramson v. City of San Angelo,[2] Texas Civ. App., 210 S.W .2d 476, wr. dism. Annotation, 7 A.L.R. 785, 787. The rule supported by the weight of American authority also excludes an unaccepted offer to sell. "The reasons for the exclusion of offers to sell as evidence of market value are, in general, the same as those applicable to offers to purchase, * * *, plus perhaps the fact that an owner offering to sell land or listing it for sale often, and perhaps nearly always, asks somewhat more for it than he believes it to be worth, or at least more than he would actually accept for it." 7 A.L.R. 2d 797. In Wichita Falls, Ranger & Ft. Worth Ry. Co. v. Cooper, Texas Civ. App., 235 S.W. 927, no writ history, it was said that, "We know of no case that has gone so far as to hold that as original evidence of market value the witness may state, as did the witness Brashier, the asking price of an individual owner of

---

Later in the course of the examination for the bill, Ritchie testified as follows:

"Q. Did he (Hanks) ever give you a written listing on it? A. He never gave me a written listing on it, no sir.

Q. And this option you spoke of that you discussed was an oral option, was it not? A. Yeah, it wasn't written.

Q. But it was to be reduced to writing, of course? A. About your option, he just told me that and I wrote it down on a piece of paper, a 7 days option but he didn't sign it."

---

2.—"The following testimony of B. F. Snyder, a merchant, was offered by appellant and excluded:

"That after he had sold his hotel business and in recent months before the trial, he looked around for a place to build himself a building. At the time of the trial he was engaged in the nickelodian business. In looking for a lot, he examined Lots Nos. 4 and 5 of appellant, and they suited him, and he offered appellant $6,000 in cash for the two lots, which the appellant rejected. Witness made no inquiry as to the market value of these lots, but relied strictly on his own judgment as to what they would be worth to him, and he made the offer in good faith.

"Appellant, with commendable frankness, cites Stone v. Payne, Texas Civ. App., Beaumont, 168 S.W. 2d 503; 17 Texas Jur., p. 446; and Sec. 699, McCormick and Ray on Evidence, as adverse authorities. No supporting authorities are referred to.

"The rule announced by these authorities is that evidence of an unaccepted offer to purchase, made by one not a party to the suit, is inadmissible on the question of value.

"We are asked to reconsider and revise this rule. The above authorities disclose that this character of evidence has long and on numerous occasions been excluded by our courts; also that the rule is one of general acceptance in other jurisdictions. Regard for stability of the law as well as our approval of the reasoning upon which the rule is based, force adherence to the rule and the conclusion that no error was committed in excluding the proffered testimony." Abramson v. City of San Angelo, 210 S.W. 2d 476, 1.c. 477.

lots, especially when no evidence is offered showing the open market sales of lots at the price asked." In the usual case the offer to sell, would constitute a self-serving declaration, and be excluded for that reason.

As I understand the opinion, the Court of Civil Appeals does not hold that either unaccepted offers to buy or unaccepted offers to sell are admissible in evidence, but rather that under the peculiar facts of this case, the offer to sell is in reality an admission rather than a self-serving declaration. Generally it would be to the pecuniary interest of an owner to appreciate the value of his land. However, in cases of partial taking under the power of eminent domain, it may be to the owner's interest to place a low valuation estimate upon the portion of the tract remaining after the taking and thus enhance his damages. So in this case we have an owner testifying that the portion of his tract remaining after the taking is worth only $500.00 per acre. It is sought to contradict this testimony by showing that he offered to sell such land at $1,250.00 per acre.[3] The question therefore is simply whether or not the one statement, "My land is worth $500.00 per acre" is contradicted by the other statement that, "I will sell my land for $1,250.00 per acre."

McCormick and Ray in their treatise upon the Texas Law of Evidence define an admission as being "any statement made or act done by one of the parties to any action or on his behalf which amounts to a prior acknowledgment by such party that one of the facts relevant to the issues is not as he now claims."[4]

2 McCormick and Ray, (2d Ed.) p. 16, Section 1121.

Most of the cases relied upon by the Court of Civil Appeals are those holding that when a party in a judicial proceeding has placed a valuation upon property owned by him, evidence that within a reasonable period before the trial, he had listed the

---

3.—It was Hanks' version of his negotiations with Ritchie that the broker kept after him to put a price on the land. Under such circumstances, the quoting of a price well above the market would be expected. Perhaps the more insistent and persistent the broker, the higher the quoted price would be, coming from one having no particular desire to sell.

4.—The distinction between admissions on the one hand and declarations against interest and self contradictory statements on the other is discussed in McCormick and Ray, (2d Ed.) Vol. 2, pp. 20, 22, sections 1122, 1124. It is said that an admission is "received because it is a statement inconsistent with the party's present position and its reception can be justified only on the adversary theory of litigation." To the present purpose, the distinction between original evidence (the admission) and impeaching evidence (the self-contradictory statement) is immaterial, for if the offer to sell be admissible under either theory, it should be admitted.

property for sale at a lower valuation is admissible in evidence. I do not disagree with these holdings as the inconsistency of position is apparent. However, the case of Cotton v. Boston Elevated Ry. Co., 191 Mass. 103, 77 N.E. 698, 700, cited by the Court of Civil Appeals presents the converse situation in which the owner offered to sell for *more* than he said the land was worth when he testified in court. The Supreme Judicial Court of Massachusetts passed upon seven exceptions to the trial court's judgment. Two were sustained; three were overruled on the merits while two were overruled because the error was not properly saved or the matter presented was wholly immaterial. The seventh and last exception considered was material in view of the retrial ordered in the case and the court's discussion thereof contains the holding upon which the Court of Civil Appeals relies to support its decision.[5] The opinion may be misleading by reason of the brevity of the statement of facts contained therein. If we consider that the belief of the owner as to the value of property is pertinent upon the issue of market value, it may be that the prior statement of an owner that he thought the land was worth $1000.00 would be admissible to impeach his testimony that the value of the land was $500.00. But to consider the mere offer that, "I will sell you this property for $1000.00" as a statement of a belief as to its market value is hardly logical nor in accord with human experience. It may be that under the facts (not disclosed however in the opinion of the Massachusetts Court) the trial judge in the Cotton case did not abuse his discretion in admitting the testimony, but the purport of the holding in view of the scant facts related is that *any* offer to sell may go to a jury for their guess as to whether or not the offer reflects a belief of the owner as to the true market value of the property.

Such a rule would constitute an open invitation to try collateral and irrelevant issues upon uncertain and conjectural premises. The bill before us does not support the hypothesis that Mr. Hanks, prior to the trial, expressed a belief that his land was worth $1250.00 an acre. The most that it shows under any permissible construction was that he would sell the land for $1250.00 per acre. A statement that, "I have an automobile worth $100 which I will sell for $500" is not self-contradictory. We cannot accept the premise that human beings usually refuse to sell property for more than it is worth, hence we cannot say

---

5.—It should be noted that in the Massachusetts case the trial court *admitted* the evidence and this action was sustained by the Supreme Judicial Court. In this case, however, the trial court *excluded* the testimony. If there be a matter of judicial discretion involved, the trial judge should be upheld.

that Mr. Hanks' offer to sell contradicted the estimate of value which he placed upon his land when testifying in court. It follows that there was no admission under the accepted definition thereof. There being no admission, all we have is an inadmissible offer to sell, or an inadmissible offer to purchase which points to the conclusion that the trial judge was correct in excluding inadmissible matters offered in evidence. I concur in the order reversing the judgment of the Court of Civil Appeals and affirming that of the trial court.

Opinion delivered January 14, 1959.

MR. JUSTICE CULVER, joined by JUSTICE GRIFFIN, dissenting.

I agree with the opinion of the Court of Civil Appeals and the disposition of this case made by that court (308 S.W. 2d 165) and respectfully enter my dissent herein.

Opinion delivered January 14, 1959.

Rehearing overruled February 18, 1959.