**The STATE of Texas, Appellant,**

v.

**L. W. DICKERSON et al., Appellees.**

**No. 14083.**

Court of Civil Appeals of Texas.

Houston.

Sept. 12, 1963.

Waggoner Carr, Atty. Gen., Morgan Nesbitt, Winston P. Crowder, J. William Colburn, Asst. Attys. Gen., Jay Howell, Jr., Sp. Asst. Atty. Gen., Austin, for appellant.

Spiner, Pritchard & Thompson, Clark G. Thompson, Houston, for appellees.

COLEMAN, Justice.

This is a condemnation suit. A judgment was entered on the verdict of the jury and the condemning authority appeals.

The appellee testified that a short time before the date of taking, J. O. Porter, as agent, submitted to him a written offer to purchase the north 50 feet of his property, containing approximately 27,000 square feet, at a price of $.72 per square foot. This offer, he testified, was refused because he felt that the land was worth more. Soon thereafter he received another written offer for the land from the same agent by which the proposed price per square foot was increased to $.85. This offer was also refused for the same reason. Mr. J. O. Porter was presented as a witness by appellee, and testified that he was authorized to submit the offers by James A. Marshall. In connection with appellee's testimony concerning the first offer there was admitted into evidence a written contract of sale reciting the deposit of earnest money, and executed by Mr. Marshall, but not by appellee Dickerson. The subsequent offer was in the form of a letter from Mr. Porter and was also introduced into evidence. Mr. Porter testified that Mr. Marshall did not want to put up any more earnest money until a price could be agreed upon. Appellant objected to the testimony and the exhibits. One ground of its original objection was that the contract of sale lacked mutuality. This objection was amplified when appellee offered the letter. Appellant objected for the reason that "the offer, being an unaccepted offer, there is no mutuality. It is in violation of the Statute of Frauds; and it is hearsay, and it involves highway influence." When this objection was overruled, the court agreed that appellant could have a "full bill on those exhibits and on the ques-

tions and answers." The objection was renewed, and again refused, in connection with the testimony of Mr. Porter. The objections made properly preserved the question of whether or not unaccepted written offers to purchase property are admissible as evidence of its market value.

■ Unaccepted offers to purchase real estate generally are inadmissible on the question of value. Hanks v. Gulf, Colorado & Santa Fe Railway Company, 159 Tex. 311, 320 S.W.2d 333; Jayson v. United States (5th Cir.), 294 F.2d 808. While the offers in the Hanks case, and in the cases cited therein, were oral and not enforceable, much of the reasoning leading to the conclusion reached in those cases is equally applicable to written offers to purchase. No distinction seems to have been made by the courts of other states on the basis that the offer was made in writing. Anno. 7 A.L.R.2d 782, as supplemented.

A written offer to purchase was held inadmissible in Arkansas State Highway Commission v. Elliott, Sup.Ct., Ark., 353 S.W.2d 526. The error of the trial court in permitting a written option agreement to go before the jury as evidence of value was held to require a reversal of the judgment in State of Texas v. Williams, Tex.Civ. App., 357 S.W.2d 799, err. ref., n. r. e. In a number of cases testimony concerning an offer to purchase land has been held inadmissible where the witness made the offer. Lower Nueces River Water Supply District v. Sellers, Tex.Civ.App., 323 S.W.2d 324, err. ref., n. r. e.; Abramson v. v. San Angelo, Tex.Civ.App., 210 S.W.2d 476, writ den.; Anno. 7 A.L.R.2d 782, at 830.

■ The trial court erred in permitting the introduction into evidence before the jury of defendant's exhibits Nos. 5 and 6. The contract of sale at $.72 per square foot signed by the purchaser and reflecting that earnest money had been deposited, which offer was raised by letter to $.85 per square foot, was calculated to influence the verdict of the jury. Appellant's only expert witness testified that in his opinion the market value of the land was $.60 per square foot. The jury probably disregarded this testimony entirely in view of the unimpeached evidence that the land could have been sold at a much higher price. The error of the trial court was calculated to cause, and probably did cause, the rendition of an improper judgment.

Appellant complains of the action of the trial court in refusing to permit cross-examination of appellee's expert witnesses as to their knowledge of certain sales and in refusing to permit appellant's expert witness to testify concerning these sales. Without detailing the testimony, properly preserved by bills of exception, it appears from the record that both of the tracts were sufficiently comparable to assist experts in forming an opinion as to the value of the property taken. Appellant's expert witness testified that the properties were comparable. 167,078 square feet of appellee's property was taken. Of the eight sales produced before the jury as comparable sales by appellee's witnesses, only one exceeded 47,500 square feet in area and all except one were much farther from the property taken. The record clearly shows that the evidence tendered by appellant was excluded on the ground that the sales were too remote. The Robey to Pfeffer sale was made in 1952 and the Davidson to Pfeffer sale was made in February, 1962. The date of taking of the property of appellee was November 20, 1960.

■ In Hays v. State, Tex.Civ.App., 342 S.W.2d 167, ref. n. r. e., the Court of Civil Appeals at Dallas carefully considered the question of the admissibility of the details of sales considered by expert value-witnesses to be comparable to the land being condemned. We agree with the conclusion of that Court that:

"* * * each expert value-witness having been held qualified to express an opinion as to the value of the land being condemned should be permitted to give the details of sales upon which

he bases such opinion, after he has stated that the sales are of property sufficiently comparable to the property involved for appraisal purposes, and were from his knowledge or investigation voluntary sales in the economic area of the condemned property made within a time during which no material changes in market conditions had occurred. But should it appear that reasonable minds cannot differ from the conclusion that the evidence of another sale lacks probative force because of dissimilarities, remoteness in time and distance, or not being voluntary, then the trial court should exclude evidence of the details of such other sales."

 The Robey-Pfeffer sale having been consummated eight years prior to the date of taking, in the absence of testimony that no material changes in market conditions had occurred, was, in the state of this record, so remote in time that reasonable minds could not differ from the conclusion that such evidence lacked probative force. On the other hand, the Davidson-Pfeffer sale was consummated about fifteen months after the date of taking. Of the eight sales relied on by appellee's witnesses as being comparable, six were more remote in point of time than this sale. It appears from the record that the trial court applied a different rule as to remoteness to sales made after the date of taking from that applied to sales made prior to the date of taking. The price per square foot of the Davidson-Pfeffer sale was $.50 per square foot. The testimony of all of the expert value-witnesses indicates that the value of land in this area increased considerably during the two years immediately prior to the date of taking and nothing in the record indicates that land values decreased during the approximately two years between the date of taking and the trial.

In City of Houston v. Collins, Tex.Civ. App., 310 S.W.2d 697, this Court said:

"* * * the question of the admissibility of the sale price of other comparable property in the same locality ordinarily involves those sales which have been made before the date of the taking. However, we see no reason why the same rule should not be applicable to sales subsequent to the taking as long as the price sought to be offered after the taking is not derived from the sale of any property which has been benefited by the project or improvement occasioning the taking. In fact, it has been so held in Housing Authority of City of Dallas v. Shambry, Tex.Civ.App., 252 S.W.2d 963, writ refused, n. r. e. 152 Tex. 122, 255 S.W.2d 184; Housing Authority of City of Dallas v. Nealy, Tex.Civ.App., 252 S.W.2d 967."

We conclude that under the facts presented by this record, reasonable minds might well differ from the conclusion that this evidence lacks probative force. The trial court, therefore, erred in refusing to permit the expert value-witness produced by appellant to testify to the details of the Davidson to Pfeffer sale.

 Appellant has also complained that the court erred in permitting one of appellee's expert value-witnesses to testify to the details of a sale on the ground that it was improved property. The record sustains a finding that the property was sold as unimproved property. While there was a question as to whether a building of some sort was on the property at the time of the sale, there was testimony that the building was of no value. There was no positive testimony that a building was on the property at the time of sale. The trial court did not err in admitting this testimony.

 Over the objection of appellant, the trial court admitted into evidence an ordinance of the City of Houston setting building lines, having the effect of restricting improvements on appellee's property, as well as evidence that by reason of this ordinance the City had refused to issue building permits to appellee for certain im-

provements he desired to erect on the premises. Appellee states in his brief: "The admission of such ordinance, appellee's testimony as to intended uses and the refusal to issue building permits was immaterial. Its only effect was to eliminate the inconsistency." We are unable to see the materiality of such testimony on the issues of value presented at this trial, with the exception of that relating to intended uses. While the suggestion is made that the jury might speculate on the reason for such valuable property remaining unimproved over a period of years, this possibility does not authorize the trial court to permit the introduction of immaterial evidence over a proper objection. However, we cannot say that, considering the entire record, this error probably caused the rendition of an improper judgment.

The judgment of the trial court is reversed and remanded for a new trial.