**Affirmed and Majority and Dissenting Opinions filed November 15, 2012.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-10-01006-CV

---

## HOUSTON UNLIMITED, INC. METAL PROCESSING, Appellant

## V.

## MEL ACRES RANCH, Appellee

---

**On Appeal from the 21st District Court**
**Washington County, Texas**
**Trial Court Cause No. 34002**

---

## DISSENTING OPINION

The expert appraisal testimony proffered by Mel Acres Ranch is legally insufficient to support the jury's award of $349,312.50 as the diminution in market value attributable to the conduct of Houston Unlimited, Inc. Metal Processing. Therefore, I respectfully dissent from this court's judgment affirming the trial court's judgment in favor of Mel Acres Ranch.

Because Mel Acres Ranch's proffered expert appraisal testimony does not support the jury's award, this court should reverse the trial court's judgment and render a take-nothing judgment. We need not opine on other issues raised by the parties, and we need not decide whether asserted stigma from temporary environmental contamination constitutes permanent damage.

Mel Acres Ranch's recovery for diminution in market value rests on the expert testimony of appraiser Kathy McKinney. She conducted a "before" and "after" analysis to compute the difference in market value of Mel Acres Ranch's 155.27-acre tract, which she attributed to "market stigma surrounding the property as a result of contamination" by Houston Unlimited.

McKinney computed the pre-contamination "before" market value of the tract as $15,000 per acre, for a total of approximately $2,329,000. Houston Unlimited's expert appraiser agreed with this figure.

To compute the post-contamination "after" market value, McKinney relied on two sources of information. The first source was a "sales comparison" analysis of two other tracts, the Sebastian site in Grimes County and the Sheridan site in Waller County; according to McKinney, the sales prices for these sites reflect a diminution in market value due to stigma from environmental contamination. The second source was conversations McKinney had with "a bunch" of people "in the marketplace," including ranchers, property owners, investors, real estate brokers, and financing institutions, to "find out what their feel was for properties that . . . had environmental stigma attached to them." Based on these sources of information, McKinney opined that the post-contamination "after" market value of Mel Acres Ranch's 155.27-acre tract was $931,500 – approximately 60 percent less than the "before" market value. Houston Unlimited's expert appraiser did not compute an "after" market value for the Mel Acres Ranch tract.

2

Individually and in concert, McKinney's sources of information are insufficient to support an award in any amount for diminution in the 155.27-acre tract's market value attributable to claimed stigma from temporary environmental contamination.

McKinney's invocation of a "sales comparison" analysis falls short because (1) the Sebastian site was not the subject of a true "sale" for comparison purposes, and (2) the Sheridan site is not comparable. *See Guadalupe-Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 808 (Tex. 2002) ("The comparable sales method fails when the comparison is made to sales that are not, in fact, comparable . . . .").

The Sebastian site was not the subject of a true "sale" for comparison purposes because uncontroverted testimony established that the below-market price paid for that site in 1997[1] was the result of a "sweetheart deal." This "sweetheart deal" was arranged between the buyer and his former employer, International Paper Company, as a form of compensation to the buyer in connection with the early termination of his employment.

Despite this arrangement, McKinney testified that the Sebastian site sale still could be considered as "an arm's length transaction" for valuation purposes. Expert appraisal testimony of this nature is not reliable, and the sales price paid for the Sebastian site in a "sweetheart deal" is not a valid basis for computing claimed diminution in value of Mel Acres Ranch's 155.27-acre tract even if it is assumed that these two tracts had comparable levels of contamination. *Cf. Preston Reserve, L.L.C. v. Compass Bank,* 373 S.W.3d 652, 663 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Actual sales price is not evidence of fair market value when circumstances indicate that the sale is out of the ordinary in some way.") (citing *SPT Fed. Credit Union v. Big H Auto Auction, Inc.*, 761 S.W.2d 800, 801 (Tex. App.—Houston [1st Dist.] 1988, no writ)).

McKinney also pointed to the sale of the Sheridan site; as of the time of trial, this

---

[1] McKinney testified that the buyer purchased the Sebastian site for "72 to 73 percent less than what other properties were selling for in Grimes County at that time."

site was "under contract" and "supposed to close any day" at a sales price of $2,900 per acre – approximately 60 percent below its original listing price of $6,500 per acre.[2] The Sheridan site is not comparable because it involved a significantly greater degree of environmental contamination than the contamination Mel Acres Ranch attributes to Houston Unlimited's activities.

The Sheridan site is a designated federal Superfund site; Mel Acres Ranch is not. According to Houston Unlimited's appraisal expert, who "[had] been familiar with the Sheridan site for many years," the Sheridan site "was a licensed or permitted disposal site that took hazardous waste: PCBs, metals, volatile organics." He stated, "They closed this with a cap and monitored the wells for 30 years, at a cost, in 1988 dollars, of between 16 and 17 million dollars." McKinney addressed this difference in her testimony as follows:

> Q. Okay. Well, Mel Acres was not a Superfund site, right?
>
> A. Correct.
>
> Q. Does it matter, for your analysis, that Mel Acres is not a Superfund site for the extent of the contamination?
>
> A. No sir, it does not. And the reason it does not, is whenever I look at the Sheridan site and then I look at the Sebastian site, they were two different types of contamination, two different entities, and they showed a very similar decrease in market value.

This testimony demonstrates that McKinney's opinion is unreliable because she used a sales price produced by a "sweetheart deal" involving the Sebastian site to bolster her inclusion of the Sheridan Superfund site as a comparable sale. The significant difference in contamination levels at the Sheridan site cannot be overcome by relying upon a sales price differential attributable to a "sweetheart deal" involving a different tract. On this

---

[2] McKinney also testified that a verbal offer of $3,849 per acre had been extended for the Sheridan site but was never reduced to writing. Any such offer constitutes no evidence to establish diminution of market value. *Cf. Preston Reserve, L.L.C.*, 373 S.W.3d at 664 ("'Texas courts have long held that unaccepted offers to purchase property are no evidence of market value of property.'") (quoting *Lee v. Lee*, 47 S.W.3d 767, 785 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)); *see also Hanks v. Gulf, Colo. & Santa Fe Ry. Co.* 159 Tex. 311, 320 S.W.2d 333, 336-37 (1959).

record, the Sheridan site is not comparable to Mel Acres Ranch.

The remaining support for McKinney's "before" and "after" computation consists of conversations she had with "a bunch" of people "in the marketplace" to "find out what their feel was for properties that . . . had environmental stigma attached to them." This is not a reliable basis for her proffered expert appraisal opinion. *See Royce Homes, L.P. v. Humphrey,* 244 S.W.3d 570*,* 578-80 (Tex. App.—Beaumont 2008, pet. denied) (Appraiser's opinion regarding diminution in house's market value due to stigma, which was "based on 'much conversation, particularly, over the years with realtors that sell these properties' and on his experience with selling flooded properties," was unreliable and inadmissible to establish 20 percent reduction in house's market value attributable to flood).

Finally, I note that McKinney did not "attempt to attribute any portion of the diminution in value . . . to any activity of Houston Unlimited" and did not "attempt to calculate what amount of that diminution in value is due to activities not related to HUI . . . ." Even if it is assumed for argument's sake that Mel Acres Ranch established a causal connection between Houston Unlimited's conduct and the harm Mel Acres Ranch attributes to that conduct, McKinney's methodology cannot support the jury's award.

For these reasons, I respectfully dissent.


/s/     William J. Boyce
Justice


Panel consists of Justices Seymore and Boyce, and Senior Justice Mirabal.[3]  (Seymore, J., majority).

---

[3] Senior Justice Margaret Garner Mirabal sitting by assignment.