ACCEPTED
14-15-00077-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
6/11/2015 10:31:27 AM
CHRISTOPHER PRINE
CLERK

## No. 14-15-00077-CV

**In the Fourteenth District Court of Appeals**
**Houston, Texas**

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
6/11/2015 10:31:27 AM
CHRISTOPHER A. PRINE
Clerk

**Harris County Flood Control District,**
**Appellant,**

v.

**H. Ben Taub, Kitchco Realty, LTD., Metco Realty, Ltd.,**
**and Texan Land and Cattle II, Ltd.,**
**Appellees.**

On Appeal from the County Civil Court at Law Number Two
Harris County, Texas, Cause No. 955,392

**BRIEF OF APPELLANT**

Vince Ryan
State Bar No. 17489500
Harris County Attorney
Victoria Jimenez
State Bar No. 24060021
victoria.jimenez@cao.hctx.net
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: (713) 755-5101
Facsimile:  (713) 437-5778

Kevin Dubose
State Bar No. 06150500
kdubose@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON
   & TOWNSEND LLP
1844 Harvard Street
Houston, Texas 77008
Telephone: (713) 523-2358
Facsimile:  (713) 522-4553

**ATTORNEYS FOR APPELLANT**

**Oral Argument Requested**

## IDENTITY OF PARTIES AND COUNSEL

**Appellant:**                      Harris County Flood Control District

**Lead Appellate Counsel for Appellant:**
Kevin Dubose
ALEXANDER DUBOSE JEFFERSON
    & TOWNSEND LLP
1844 Harvard Street
Houston, Texas 77008

**Trial and Appellate Counsel for Appellant:**
Vince Ryan
Harris County Attorney
Melissa L. Spinks
Cedric Loeb
Victoria Jimenez
Assistant County Attorneys
1019 Congress, 15th Floor
Houston, Texas 77002

**Appellees:**
H. Ben Taub, Kitchco Realty, LTD.
Metco Realty, Ltd., and
Texan Land and Cattle II, Ltd.

**Trial and Appellate Counsel for Appellees:**
H. Dixon Montague
Don C. Griffin
David Wall
Catherine Bukowski Smith
VINSON & ELKINS LLP
1001 Fannin Street
2500 First City Tower
Houston, Texas 77002

# TABLE OF CONTENTS

Identity of Parties and Counsel ............................................................................ 2

Index of Authorities ............................................................................................. 5

Statement of the Case .......................................................................................... 7

Issues Presented .................................................................................................. 7

Statement of Facts ............................................................................................... 8

Summary of Argument ....................................................................................... 13

Argument ............................................................................................................ 15

    I.   The trial court abused its discretion in admitting evidence of unconsummated sales. ................................................................... 15

        A.  The trial court abused its discretion in admitting evidence of an unconsummated sale between Taub and Frantz. ..................... 15

        B.  The trial court abused its discretion in admitting evidence of an unexercised option contract between Taub and Kinder Morgan. ......................................................................................... 17

    II.  The trial court abused its discretion in admitting evidence of sales to governmental entities with condemning authority. ........................... 19

        A.  Admitting evidence of sales to condemning authorities was an abuse of discretion. ................................................................. 19

        B.  The trial court's abuse of discretion was compounded by excluding evidence that the jury should have been allowed to consider in determining the true value of the sale. ................... 23

    III. The trial court abused its discretion in admitting evidence of sales that were so dissimilar as to not be probative. ....................................... 24

        A.  The trial court abused its discretion in admitting evidence of two small hotel properties. ........................................................... 24

B.  The trial court abused its discretion in admitting evidence of a 60-foot wide access strip across Kinder Morgan's property. ............................................................................... 28

IV. These abuses of discretion were highly prejudicial because they provided an unreliable foundation for the expert opinion that the jury relied on in determining value. ....................................... 29

Conclusion and Prayer ...................................................................... 30

Certificate of Compliance ................................................................. 31

Certificate of Service ........................................................................ 32

Appendix ........................................................................................... 33

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*City of Austin v. Capitol Livestock Auction Co.*,
453 S.W.2d 461 (Tex. 1970) (Pope, J.) ........................................................19, 20

*City of Harlingen v. Estate of Sharboneau*,
48 S.W.3d 177 (Tex. 2001)...............................................................................26

*Cnty. of Dallas v. Missouri Pac. R.R. Co.*,
No. 05-90-01258-CV, 1992 WL 1931 (Tex. App.—Dallas Jan. 7,
1992, no writ) (not designated for publication)...................................................18

*Collin Cnty. v. Hixon Family P'ship, Ltd.*,
365 S.W.3d 860 (Tex. App.—Dallas 2012, pet. denied).............................27, 28

*Creighton v. State*,
366 S.W.2d 840 (Tex. Civ. App.—Eastland 1963, writ ref'd n.r.e.) .................26

*Gomez Leon v. State*,
426 S.W.2d 562 (Tex. 1968) (Calvert, C.J.)....................................19, 20, 21, 22

*Guadalupe-Blanco River Auth. v. Kraft*,
77 S.W.3d 805 (Tex. 2002)........................................................................26, 28

*In re Kuntz*,
124 S.W.3d 179 (Tex. 2003) (orig. proceeding) ................. 13, 16, 18, 21, 28, 29

*Lower Nueces River Water Supply Dist. v. Sellers*,
323 S.W.2d 324 (Tex. Civ. App.—San Antonio 1959, writ ref'd
n.r.e.) ...........................................................................................................16, 17

*In re M.S.*,
115 S.W.3d 534 (Tex. 2003) ...........................................................................11

*Mayfield v. Harris Cnty.*,
No. 14-12-00308-CV, 2013 WL 1739382 (Tex. App.—Houston
[14th Dist.] April 23, 2013, no pet.) (mem. op.) (per curiam) ...........................13

*State v. Arthur*,
435 S.W.2d 577 (Tex. Civ. App.—Houston [14th Dist.] 1968, no writ)..................................................................................................................19

*State v. Dickerson*,
370 S.W.2d 742 (Tex. Civ. App.—Houston [1st Dist.] 1963, no writ)..................................................................................................................16

*State v. Frost*,
456 S.W.2d 245 (Tex. Civ. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.) ......................................................................................................19

*State v. Williams*,
357 S.W.2d 799 (Tex. Civ. App.—Texarkana 1962, writ ref'd n.r.e.) .............................................................................................................17, 18

*Urban Renewal Agency v. Georgetown Sav. & Loan Ass'n*,
509 S.W.2d 419 (Tex. Civ. App.—Austin 1974, writ ref'd n.r.e.)....................27

*Walker v. Packer*,
827 S.W.2d 833 (Tex. 1992) (orig. proceeding) .................................................13

**Statutes**

TEX. EDUC. CODE ANN. §11.155 ...........................................................................19

TEX. LOC. GOV'T CODE ANN. §251.001, §561.001 ................................................19

## STATEMENT OF THE CASE

*Nature of the case*   Condemnation suit by Harris County involving a 42-acre tract of land needed for the Deer Park Detention Basin.

*Trial court*   Harris County Civil Court at Law No. 2, the Honorable Theresa Chang presiding.

*Disposition*   After hearing expert testimony based on types of valuation evidence that has been held in other cases to be unreliable as a matter of law, the jury found that the tract was worth more than $11.6 million. CR2:1200. With pre-judgment interest, the court rendered a judgment against Harris County for over $12.1 million. CR2:1207-12.

*Post-trial*   Harris County filed a motion for new trial, CR2:1219-24, which was denied. CR2:1226. Harris County timely perfected this appeal. CR2:1227.

## ISSUES PRESENTED

1.      Did the trial court commit reversible error by admitting unreliable evidence of value in a condemnation case under the guise of "comparable sales," which included:

- an unconsummated sale and an unexercised option contract;

- transactions with condemning authorities; and

- sales of dissimilar properties?

2.      Did the trial court commit reversible error by entering judgment on a jury verdict that directly tracked an expert's opinion based on unreliable and inadmissible evidence?

7

The underlying objective facts in this case are straightforward and undisputed.

Harris County[1] sought to exercise the right of eminent domain over a 42-acre tract in Deer Park owned by Taub,[2] for the purpose of developing the Deer Park Detention Basin. CR1:8. A petition in condemnation was filed in January 2010, *see* CR1:7-12; a hearing was conducted before a panel of Special Commissioners in April 2010; and the Award of the Special Commissioners was issued the next day. CR1:20-24. Harris County objected to that award and demanded a jury trial in county court. CR1:26.

The case was tried in September 2014, and in response to the only jury question asked, the jury found that the value of the subject property was $11,636,238. CR2:1200. The trial court rendered judgment for that amount, plus interest, CR 2:1207-13, and Harris County appealed. CR 2:1227.

All of that is undisputed. What was hotly disputed was the valuation of the subject property. Harris County's expert, Dominy, concluded that the property was worth $2.00/sq. ft., which would add up to $3,730,506; but he also testified that a

___

[1] The actual party in this case is Harris County Flood Control District, which is a distinct entity from Harris County. But, for the sake of brevity, that party will be referred to as "Harris County."

[2] The property was owned by various individuals and business entities associated with the Taub family. Because their interests in this case are 100% aligned, they will be referred to collectively as "Taub."

property owner would need to spend another $1,150,000 to construct roads and bridges to obtain access to the property, which would reduce the total value to $2,580,506. *See* RR30A:72 (PX16) (App. Tab 4); RR13:223.

Taub's primary expert, Mark Sikes, opined that the property was worth $6.25/sq. ft., which came out to $11,636,238 — the exact number found by the jury.[3] *Compare* RR19:79, 20:131, RR30B:4 (DX1) (App. Tab 6), *and* CR2:1200 (App. Tab 2 at 1200).

Both experts used the "comparable sales" method of property appraisal. Harris County's expert used the sales of 9 comparable properties to support his conclusion of $2/sq. ft.: they range in sales price from $3.67/sq. ft. to $1.34/sq. ft.; 3 were less than $2.00/sq. ft.; 4 were more than $2.00/sq. ft.; and 2 were exactly $2.00/sq. ft. *See* RR30A:73 (PX17a) (App. Tab 5). The expert's valuation was right in the middle range of the comparable sales.

---

[3] Taub retained three experts on valuation: Sikes, Wayne Baer, and Clinton Bogart. This brief will limit its discussion to Sikes because the jury accepted his valuation verbatim, *compare* RR19:79, 20:131, RR30B:4 (DX1), *and* CR 2:1200, while Baer's valuation was about half a million dollars less than Sikes's valuation, the jury's finding, and the judgment, *compare* RR30B:5 (DX2), RR30B:4 (DX1), CR2:1200, and Bogart was not allowed to testify about valuation at all. *See* RR27:221-24. Additionally, Sikes's opinion was based on 10 comparable sales, RR19:87; Baer's opinion was based on 8 comparable sales, all of which were used by Sikes (Sikes used two sales that Baer did not use). *Compare* RR30B:21 (DX25), *and* RR30B:18 (DX21). So the arguments about the comparable sales used by Sikes also apply to Baer.

Taub's expert used 10 properties to support his opinion of $6.25/sq. ft.: they range from $7.42/sq. ft. to $2.05/sq. ft.; only 2 of the 10 were over his price of $6.25/sq. ft.; and 6 were less than $4/sq. ft. *See* RR30B:18 (DX21) (App. Tab 8). So his valuation was at the high end of the spectrum of comparable sales he relied on.

One might ask why the jury so willingly believed Taub's expert's opinion on valuation when his numbers don't seem to add up — even if all of these numbers were included, and, as the Argument section demonstrates, his five highest values should have been excluded. The answer can best be found by reading the Reporter's Record, which leaves the impression that the case was not tried on a level playing field. One side seemed to get whatever it wanted; the other was blocked at almost every turn. Although it is more of a qualitative feeling than a quantitative calculation, the numbers alone suggest an imbalance from the normal give-and-take at trial.

For example, focusing only on the critical testimony of Taub's primary valuation expert, Mark Sikes, when he was presented for direct examination, Harris County made 38 objections that were ruled upon: 29 were overruled, and 9 were

sustained.[4] Yet when Harris County attempted to cross-examine Sikes, Taub objected 34 times, and all 34 objections were sustained.[5]

In addition to these rulings on objections, the trial process was skewed in other ways. The trial court interrupted the opening statement of Harris County four times to comment on factual statements. RR13:124-25, 130-31, 137, 200. The court cross-examined Harris County's appraisal expert and forced him to do a misleading calculation in front of the jury as a way of making an argument for Taub's interpretation of the expert's valuation. RR17:36-38. The court commented on the weight of the evidence. RR21:75-76; 22:100-01; 23:112. And the court allowed Taub's counsel to talk about, or elicit testimony about, pre-trial evidentiary rulings by the court, which is another form of impermissibly commenting on the weight of the evidence.[6] *See* RR13:78-81; 21:10-13.

We realize that it is unlikely that any of these actions rise to the level of reversible error, and for that reason do not bring them to this Court as grounds for error. But an awareness of the circumstances at trial might help this Court understand

---

[4] Harris County objections overruled: RR19:11, 16-19, 27-29, 32-33, 36-37, 42, 50, 60-61, 66-69, 77, 101-04, 105-09, 120-21, 128; RR20:7-8, 9-10, 11, 23-27, 29-31, 35-42, 53, 54-55, 61-62, 98-103, 103-10, 112, 134, 134-35, 135-36. Harris County objections sustained: RR19:14-15, 65, 111-12, 115; RR20:18-19, 43-45, 90, 95, 134.

[5] Taub objections sustained: RR21:27, 31-32, 38-39, 41-43, 45-53, 58-61, 84, 94, 96-99, 102-03, 104, 106, 108-11, 115-19, 120-23, 132, 134-35, 143-48; RR22:17, 17-18, 46, 48, 83-88, 93-96; RR23:10-11, 13, 14-19, 19-22, 51-52, 55-56, 81-83, 92-94. Taub objections overruled: none.

[6] *See In re M.S.*, 115 S.W.3d 534, 537-38 (Tex. 2003).

how an environment was created that made it even more likely that a jury would be persuaded by the opinion of an expert witness that was not supported by reliable evidence.

## SUMMARY OF ARGUMENT

This was an eminent domain case involving the condemnation of a 42-acre tract in Deer Park. The only issue litigated at trial was the value of the property.

There are well-established rules governing the valuation of property in condemnation litigation. The trial court violated those rules on multiple occasions, admitting legally unreliable evidence that included:

- evidence of an unconsummated offer and an unexercised option contract, which are inadmissible to prove value in a condemnation proceeding;

- evidence of sales to entities with condemning authority, which are inadmissible to prove value in a condemnation proceeding; and

- evidence of three small tracts that were so dissimilar in size and usage that they were not "comparable" sales that would be probative of value.

Although a trial court's evidentiary rulings are discretionary, the court does not have discretion when determining what the law is or applying the law to the facts. *In re Kuntz*, 124 S.W.3d 179, 181 (Tex. 2003) (orig. proceeding) (cited in *Mayfield v. Harris Cnty.*, No. 14-12-00308-CV, 2013 WL 1739382 (Tex. App.—Houston [14th Dist.] April 23, 2013, no pet.) (mem. op.) (per curiam). Moreover, "a failure by the trial court to analyze or apply the law correctly . . . constitutes an abuse of discretion." *Kuntz*, 124 S.W.3d at 181 (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

Each of these violations of well-established evidentiary rules was an abuse of discretion. These abuses of discretion, individually and collectively, caused the jury to find an inflated value for the subject property, which resulted in an improper judgment. The judgment should be reversed, and the case remanded for a new trial with instructions about which evidence properly can be considered.

The only issue in this eminent domain case was the valuation of the subject property, and that was an issue for which the jury was dependent on expert testimony. Taub's expert was allowed to present an expert opinion on valuation based on 10 "comparable sales." But 5 of the 10 comparable sales — the 5 with the highest values — should have been excluded from the evidence and the expert's consideration.

## I. The trial court abused its discretion in admitting evidence of unconsummated sales.

### A. The trial court abused its discretion in admitting evidence of an unconsummated sale between Taub and Frantz.

Sikes's Comparable Sale 8 is a contract for the sale of the subject property. RR 19:120-21, 20:10-11. It originally was a contract for John Frantz to purchase a 99-acre tract owned by Taub for $3/sq. ft. RR 20:32. But after Frantz learned that Harris County intended to condemn part of the property, the contract was amended by splitting the property, increasing the sale price for the 42-acre subject tract to $6/sq. ft., and leaving the price for the remaining 56-acre stayed at $3/sq. ft. *See* RR 20:47. Frantz never closed on that contract. RR20:49-51; 21:22. Harris County obtained a running objection to any testimony about this "sale" because it was an unconsummated sale. *See* RR19:120-21; 20:10-12.

15

Unconsummated contracts for the sale of real estate are inadmissible to prove value in a condemnation case. *State v. Dickerson*, 370 S.W.2d 742, 744 (Tex. Civ. App.—Houston [1st Dist.] 1963, no writ) ("Unaccepted offers to purchase real estate generally are inadmissible on the question of value."); *Lower Nueces River Water Supply Dist. v. Sellers*, 323 S.W.2d 324, 329 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.) ("It is settled that evidence of unaccepted offers to buy the land involved is not admissible in a condemnation suit."). By failing to apply the law regarding unconsummated sales, the trial court abused its discretion. *See Kuntz*, 124 S.W.3d at 181.

In *Dickerson*, the court not only held that admitting evidence of unconsummated sales was error, but that "[t]he error of the trial court was calculated to cause, and probably did cause, the rendition of an improper judgment." *Dickerson*, 370 S.W.2d at 744. In *Sellers*, the party introducing the evidence of an unconsummated offer to buy the subject property — at a price very close to the value found by the jury — admitted that unconsummated sales are inadmissible, but argued that the error was harmless because of an instruction from the court and a jury affidavit indicating it was not considered. Nevertheless, the court concluded that the error was harmful and probably caused the rendition of an improper verdict. *Sellers*, 323 S.W.2d at 329.

Here, as in *Sellers*, the jury accepted the valuation of an expert — in this case the bottom line conclusion that the subject property was worth $6.25/sq. ft. RR19:79, RR30B:4 (DX1). That valuation was close to the unconsummated sale price for the subject property of $6.00/sq. ft., RR20:47, which the expert said should be given "significant weight" because it was for the same property. RR20:23. But unlike in *Sellers*, here there was no admission of error, no instruction from the court correcting the error, and no juror affidavit that the unconsummated sale was not considered. If the error was harmful in *Sellers*, the evidence here presents an even stronger case for harmful error.

## B. The trial court abused its discretion in admitting evidence of an unexercised option contract between Taub and Kinder Morgan.

Sikes's Comparable Sale 5 refers to an option contract that Taub executed to purchase a 60-foot strip across property owned by Kinder Morgan to provide access for the subject property. RR20:56-57. The option was never exercised, and that contract of possible sale was never executed. RR20:57. Harris County obtained a running objection to evidence relating to this option contract for which the option was never exercised. R20:7-8, 61-62.

Option contracts are treated as unaccepted offers to sell or unconsummated offers to buy. *State v. Williams*, 357 S.W.2d 799, 800 (Tex. Civ. App.—Texarkana 1962, writ ref'd n.r.e.). As demonstrated in the previous section, unconsummated contracts for the sale of real property are not admissible evidence of value in a

17

condemnation case. Additional authorities addressing option contracts in particular have held that they are "incompetent evidence of land value in condemnation cases," and "valueless as a foundation for an opinion of value." *Id.*; *see also Cnty. of Dallas v. Missouri Pac. R.R. Co.*, No. 05-90-01258-CV, 1992 WL 1931, *2 (Tex. App.— Dallas Jan. 7, 1992, no writ) (not designated for publication) ("The law is clear that an [unexercised] option to purchase is no evidence of a sale . . . and is inadmissible to prove value."). By failing to apply the law regarding unexercised option contracts, the trial court abused its discretion. *See Kuntz*, 124 S.W.3d at 181.

Moreover, *Williams* held that the admission of an option contract, and the use of it by an expert to prove value, combined with other errors, was reversible error. *Williams*, 357 S.W.2d at 803 ("The cumulative effect of the option letter with the errors discussed in then (sic) original opinion tilt the scale in favor of a conclusion that the admission of the incompetent evidence was harmful. When the record as a whole is examined, it appears that these errors probably caused the rendition of an improper judgment."). In this case, the Kinder Morgan strip was particularly harmful because the option sale price was $6.44/sq. ft., which was one of only two comparable sales identified by Sikes that exceeded his value of $6.25/sq. ft. *See* RR30B:18 (DX21). Thus, as in *Williams*, the admission of the option contract "tilts the scale in favor of a conclusion that the admission of the incompetent evidence was harmful," and "probably caused the rendition of an improper judgment."

**II.** **The trial court abused its discretion in admitting evidence of sales to governmental entities with condemning authority.**

Sikes also included two "comparable sales" that were sales to governmental entities with the power of eminent domain: Comparable Sale 3 was a sale to Deer Park Independent School District (DPISD).[7] RR20:14-15. Comparable Sale 4 was a sale to the City of Deer Park.[8] RR19:60.

> **A.** **Admitting evidence of sales to condemning authorities was an abuse of discretion.**

The Texas Supreme Court has concluded, "Our courts have consistently held that proof of sales of property to a . . . governmental agency having power of eminent domain is not admissible in a condemnation suit." *Gomez Leon v. State,* 426 S.W.2d 562, 565 (Tex. 1968) (Calvert, C.J.); *see also City of Austin v. Capitol Livestock Auction Co.*, 453 S.W.2d 461, 465 (Tex. 1970) (Pope, J.) (citing *Gomez Leon*); *State v. Frost*, 456 S.W.2d 245, 257 (Tex. Civ. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.); *State v. Arthur,* 435 S.W.2d 577, 579 (Tex. Civ. App.—Houston [14th Dist.] 1968, no writ).

We anticipate that Taub will argue that the sales to DPISD and the City of Deer Park were not condemnation sales, so the rule against sales to condemning

---

[7] School districts such as DPISD have authority to acquire property through eminent domain under the Education Code. *See* TEX. EDUC. CODE ANN. §11.155.

[8] Municipalities such as the City of Deer Park have authority to acquire property through eminent domain under the Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. §251.001, §561.001.

19

authorities does not apply. Yet the rule stated by the Texas Supreme Court is not stated that narrowly: it merely says that the proof of a sale to a "governmental **agency having power of eminent domain** is not admissible in a condemnation suit." *Gomez Leon*, 426 S.W.2d at 565 (emphasis added); *see also Capitol Livestock*, 453 S.W.2d at 465 ("The evidence was improperly admitted since the telephone company is a corporation which has the power of eminent domain."). In both cases, the emphasis is on an entity that has the power of eminent domain, not whether that power was being exercised in that particular sale. In fact, neither case even mentions whether the power of eminent domain was being exercised in a condemnation sale for the comparable sales at issue.

In *Gomez Leon*, the supreme court explained the rationale behind this rule: "The reason for excluding proof of such sales is that they do not meet the willing seller-willing buyer concept; they are made under a **direct or an implied** threat of condemnation, and, theoretically at least, are not free and voluntary." *Gomez Leon*, 426 S.W.2d at 565. Thus, the supreme court not only says nothing about requiring that a condemnation sale take place, but expressly states that when dealing with a condemning authority there is a direct or implied threat of condemnation, and under those circumstances the sale cannot be free and voluntary.

The court also observed in *Gomez Leon*, "There is even less reason for permitting an expert witness to consider such sales in arriving at an opinion as to the

value of **property being taken through condemnation** and to testify to the prices paid." *Gomez Leon*, 426 S.W.2d at 565. Thus, the court acknowledges that the argument for exclusion is even stronger when there is a direct condemnation sale; but the fact that the comparison can be made at all demonstrates that there is still a reason to exclude in the absence of a direct condemnation sale.

Harris County obtained a running objection, which was overruled, to any evidence or testimony related to Comparable Sale 3 because it was a sale to a condemning authority, Deer Park Independent School District (DPISD). RR19:16-22, 126-27. Similarly, Harris County obtained a running objection, which was overruled, to any evidence or testimony related to Comparable Sale 4 because it was a sale to a condemning authority, the City of Deer Park. RR19:60-61, 127-30. By failing to apply the law regarding sales to entities with the power to condemn, the trial court abused its discretion. *See Kuntz*, 124 S.W.3d at 181.

In *Gomez Leon*, the court directly addressed whether the admission of evidence of a sale to a governmental authority with eminent domain power could be harmful error. The court emphasized that in *Gomez Leon* the error bore "directly on the issue of value, the only issue in the case." *Gomez Leon*, 426 S.W.2d at 565. The same is true in this case.

In *Gomez Leon,* an expert for the state used sales to an entity with condemning authority to support his low valuation opinion of the subject property. Those sales

21

ranged from $0.09/sq. ft. to $0.22/sq. ft., and he concluded the value of the subject property was $0.15/sq. ft. *Id.* at 564-65. The landowner's expert in that case valued the property at $1.75/sq. ft. *Id.* The jury found the property to be worth $0.35/sq. ft., which was less than the landowner's expert's valuation, but still more than twice the State's expert's valuation. *Id.* Nevertheless, the supreme court held, "it is more likely than not that the inadmissible testimony caused the jury to place a lower value on the property than it would have placed thereon." *Id.*

In this case, the fact that the jury was influenced by the expert relying on inadmissible evidence was even clearer. Sikes testified that the subject property was worth $6.25/sq. ft., or a total of $11,636,238. RR19:79, 20:131. The jury found the exact same total number, CR2:1200, meaning that it completely adopted Sikes's value of $6.25. So unlike in *Gomez Leon*, where the court concluded that the jury was probably influenced by the expert's opinion to find a lower figure than it otherwise might have, even though the jury did not follow the expert exactly, here the jury directly followed the expert's opinion. Thus, as Chief Justice Calvert concluded in *Gomez Leon*, this Court should conclude that, "it is more likely than not that the inadmissible testimony caused the jury to place a [higher] value on the property than it would have placed thereon." *Gomez Leon*, 426 S.W.2d at 565.

22

**B.**     **The trial court's abuse of discretion was compounded by excluding evidence that the jury should have been allowed to consider in determining the true value of the sale.**

When DPISD purchased a 56-acre tract of land from Taub, it paid $11,078,756, or $4.50/sq. ft. RR20:15. But at the same time as that sale, and negotiated in conjunction with it, Taub agreed to donate $1,850,000 back to DPISD. *See* RR24:224; 30A:88-96 (PX41-45).

The relationship between the sale and the donation was not coincidental or imagined. An e-mail from the attorney representing Taub in this litigation — sent while this condemnation suit to determine the value of the land was pending — to the real estate agent representing DPISD makes the relationship explicit: "It is my understanding from you that the offer of $4.50 per foot is acceptable to the School District. Of this amount, the Owners would like to make a $0.75 donation to the School District, effectively leaving a net amount of $3.75 per foot." RR30A:92 (PX 43).

In response, the agent for DPISD acknowledged the relationship between the sale price and the donation by saying, "The offer of $4.50 per foot is acceptable with the following adjustments. $3.50 per foot for the 50 plus acres with a donation from the Taubs of $1.00 per foot to the school district." RR30A:92 (PX 43). Finally, in a subsequent letter confirming the deal, Taub made clear that the donation was not an unrelated act of altruism by insisting that "the above-referenced donation is

contingent upon the closing and the funding of the sale of the Property pursuant to the contract. . . ." RR30A:96 (PX 45).

Sikes used this transaction as a comparable sale, and even suggested that it be given "great consideration" because it is a tract that comes from the same parent tract as the subject property. RR20:15. Sikes used the $4.50/sq. ft. contract price as the sale price for purposes of a comparison in arriving at his value of the subject property. But the jury should have been able to consider the e-mails and letters linking the sale price to the donation back by the Taubs, which the parties themselves treated as reducing the true cost to the DPISD to $3.75/sq. ft. or $3.50/sq. ft. *See* RR30A:92 (PX 43). All of this evidence was included in an offer of proof, RR24:209-32, and the trial court ruled that all of that evidence must be excluded from the jury's consideration. RR24:232.

If the jury is allowed to consider this sale at all — which it should not have been — it at least should have been allowed to hear the whole story, and determine for itself whether the negotiated donation skewed the true value of the sale.

**III.    The trial court abused its discretion in admitting evidence of sales that were so dissimilar as to not be probative.**

**A.    The trial court abused its discretion in admitting evidence of two small hotel properties.**

Sikes also based his opinion on Comparable Sale 7, a 2-acre tract containing a hotel, the Candlewood Suites. RR19:32-33; 20:9-10. Taub also introduced into

24

evidence pictures and testimony about another hotel on a similar-sized tract, a La Quinta Inn. RR19:27-31. These two properties took on added significance because of evidence that the price for the DPISD sale was derived by using these two hotel properties as comparable sales. RR20:20; 23:7-8, 13.

The two hotel properties are not comparable to the subject tract:

- The two hotel property sales involved roughly two-acre tracts with hotels on them. In contrast, the subject property is a 42-acre vacant tract. RR19:27, 32; 20:10.

- The hotel properties were zoned for highway service, RR20:10, and the Taub's expert described them as an example of "commercial use," meaning they "generate[] income that's . . . non-industrial." RR19:34-35. In contrast, the subject tract was zoned M1/M2, uses described in the Deer Park Municipal Code as "Industrial Park" (M1) and "General Industrial" (M2). RR13:234; *see also* RR30B:9 (DX 11A). As Sikes admitted, you would not build a hotel on this site. RR23:9.

- The hotel properties are both located on East Boulevard in Deer Park, a major thoroughfare. RR19:29, 34. In contrast, the subject property has no roadway access from the closest road, Highway 225. RR15:118-20; 17:10, 16.

- A hotel is a unique property in that it is a dense collection of income-producing units that generate revenue on a daily basis. The subject property

would not have that characteristic under anyone's testimony regarding the subject property's highest and best use.

Not surprisingly, the sales price for the Candlewood Suites ($7.42/sq. ft.) was significantly higher than any other comparable sale identified by any of the experts.

When properties used as comparable sales are so dissimilar from the subject property that their sales prices are not probative, they are inadmissible to prove value in a condemnation case. *See Guadalupe-Blanco River Auth. v. Kraft,* 77 S.W.3d 805, 807-809 (Tex. 2002) ("The comparable sales method fails when the comparison is made to sales that are not, in fact, comparable to the land condemned."); *City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 182 (Tex. 2001) ("[I]f the comparison is so attenuated that the appraiser and the fact-finder cannot make valid adjustments for these differences, a court should refuse to admit the sale as comparable."); *Creighton v. State*, 366 S.W.2d 840, 843 (Tex. Civ. App.—Eastland 1963, writ ref'd n.r.e.) (judgment reversed because expert using comparable sales method used tracts that "were not shown to be comparable to appellants' land," even though a witness made adjustments to account for the dissimilarity; "the only comparable things about said tract and appellants' land was that both were land and 'fairly close in.'"). Here, as in *Creighton*, the only comparable things about the subject property and the hotel tracts is that they are land, and they are located near each other in Deer Park.

At a minimum, a comparable sale must have the same highest and best use as the subject property. *Collin Cnty. v. Hixon Family P'ship, Ltd.*, 365 S.W.3d 860, 871 (Tex. App.—Dallas 2012, pet. denied) ("[C]omparable sales must have the same highest and best use as the condemned properties on the date of taking or within a reasonable period of time."); *Urban Renewal Agency v. Georgetown Sav. & Loan Ass'n,* 509 S.W.2d 419, 421–22 (Tex. Civ. App.—Austin 1974, writ ref'd n.r.e.) ("[F]or any of the properties to be comparable to the property in issue, we must assume that, on retrial, appellees will offer proof that the creek bottom property can be put to relatively the same uses as those for which the comparable properties were used, or are capable of being used.").

Here, Taub's expert testified that the highest and best use of the 42-acre subject property would be an office park, research park, or an office-warehouse space, which are consistent with its M1/M2 zoning designation. RR19:77-78. The owners of the 2-acre hotel tracts zoned for highway service have determined that the highest and best use of their properties is hotel development, and Sikes admitted that you would not build a hotel on the subject property. RR23:9. Obviously, those determinations of highest and best use are inconsistent.

The hotel properties are so dissimilar that any evidence concerning them should have been excluded. Harris County objected to that evidence and obtained running objections concerning both properties, which were consistently overruled.

27

*See generally* RR19:27-33, 20:9-10. By failing to apply the law regarding dissimilar properties, the trial court abused its discretion. *See Kuntz,* 124 S.W.3d at 181.

**B.      The trial court abused its discretion in admitting evidence of a 60-foot wide access strip across Kinder Morgan's property.**

Sikes Comparable Sale 5, the 60-foot strip across Kinder Morgan's property, already has been discussed in the context of it being an unexercised option contract. But it also should have been excluded as a property so dissimilar that it was not probative of value.

Harris County objected to Comparable Sale 5 because this 60-foot access strip comprising a total of 1.9 acres is so dissimilar to the subject 42-acre tract that it has no probative value as a comparable sale. RR 20:7-8. As previously demonstrated, the supreme court has held that "[t]he comparable sales method fails when the comparison is made to sales that are not . . . comparable to the land condemned." *Kraft,* 77 S.W.3d at 807-809. A 42-acre tract is not comparable to a 1.9 acre tract spread out along a 60-foot-wide strip.

In addition to a requirement of similarity in size, "comparable sales must have the same highest and best use as the condemned properties on the date of taking. . . ." *Hixon Family P'ship*, 365 S.W.3d at 871. Sikes testified that the highest and best use for the subject tract was an office park or a research park, RR19:77-78, but admitted that the Kinder Morgan strip could be used only as an access roadway. *See* RR22:32, 23:66.

28

Thus, because of dissimilarities in size and usage, evidence of the Kinder Morgan option contract should have been excluded. By failing to apply the law regarding dissimilar properties, the trial court abused its discretion. *See Kuntz*, 124 S.W.3d at 181.

**IV.     These abuses of discretion were highly prejudicial because they provided an unreliable foundation for the expert opinion that the jury relied on in determining value.**

The only issue in this case was valuation of the subject property, and the most important witness on that subject was Sikes, whose value calculation the jury followed to the dollar. *Compare* RR19:79, 20:131, RR30B:4 (DX1), *and* CR2:1200, 1207-13.

Sikes used 10 comparable sales to come up with a value of $6.25/sq. ft. As we have demonstrated in the preceding sections I-III, five of those comparable sales should have been excluded as evidence and did not provide a reliable basis for the expert's opinion. Here are the sales prices of the transactions that should have been excluded:

| Comp. sale | #3 | #4 | #5 | #7 | #8 |
|---|---|---|---|---|---|
| Price/sq. ft. | $4.50 | $2.79 | $6.44 | $7.42 | $5.00 |

*See* RR30B:17 (DX20) (App. tab 7), 18 (DX21) (App. tab 8).

In contrast, consider the sales prices of the remaining, non-objectionable transactions:

| Comp. sale | #1 | #2 | #6 | #9 | #10 |
|---|---|---|---|---|---|
| Price/sq. ft. | $2.50 | $3.67 | $2.05 | $3.40 | $3.75 |

*See* RR30B:17 (DX20) (App. tab 7), 18 (DX21) (App. tab 8).

For the reasons stated in the preceding sections I-III, Comparable Sales 3, 4, 5, 8, and 9 were either not sales, not comparable, or sales to condemning authorities. Therefore, they should have been excluded as evidence and from the expert's calculations as unreliable. If they are removed from the calculus, the remaining comparable sales range from $2.50 below Sikes's determination of $6.25/sq. ft. to $4.20 below Sikes's number. Those numbers cannot begin to support Sikes's expert opinion, and that lack of reliable supporting data warrants reversal of the judgment based on Sikes's opinion, and remand for a new trial.

## CONCLUSION AND PRAYER

For all these reasons, Appellant Harris County Flood Control District respectfully requests that this Court reverse the judgment of County Court at Law No. 2 and remand this case for a new trial, with an opinion providing guidance for the trial court about the evidence that should and should not be considered in arriving at a proper valuation. Appellant also requests all other relief to which it may be entitled.

Respectfully submitted,

/s/Kevin Dubose

Vince Ryan
State Bar No. 17489500
Harris County Attorney
Victoria Jimenez
State Bar No. 24060021
victoria.jimenez@cao.hctx.net
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5142
Facsimile: (713) 437-5778

Kevin Dubose
State Bar No. 06150500
kdubose@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON
  &amp; TOWNSEND LLP
1844 Harvard Street
Houston, Texas 77008
Telephone: (713) 523-2358
Facsimile:  (713) 523-4553

**ATTORNEYS FOR APPELLANT**

**CERTIFICATE OF COMPLIANCE**

Based on a word count run in Microsoft Word 2013, this brief contains 5,200 words, excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Procedure 9.4(i)(1).

/s/Kevin Dubose
Kevin Dubose

**CERTIFICATE OF SERVICE**

On June 11, 2015, I electronically filed this Brief of Appellant with the Clerk of Court using the eFile.TXCourts.gov electronic filing system which will send notification of such filing to the following:

Cathy Bukowski Smith
VINSON & ELKINS LLP
1001 Fannin Street
2500 First City Tower
Houston, Texas 77002
csmith@velaw.com

/s/Kevin Dubose
Kevin Dubose

**APPENDIX**

| Tab | Item |
|---|---|
| 1. | Plaintiff's First Amended Petition in Condemnation. CR1:14-19 |
| 2. | Jury Charge. CR2:1195-1202 |
| 3. | Final Judgment. CR2:1207-13 |
| 4. | Dominy's MV Conclusion. PX 16 |
| 5. | Dominy's Land Sales Chart. PX17a |
| 6. | Sikes's MV Conclusion. DX1 |
| 7. | Sikes's Land Sales Map. DX20 |
| 8. | Sikes's Adjustment Grid. DX21 |

**021389**    NO. _____ **955392**

| | | |
|---|---|---|
| HARRIS COUNTY FLOOD | § | IN THE COUNTY CIVIL COURT |
| CONTROL DISTRICT | § | |
| | § | AT LAW NUMBER C.C.C.L. #2 |
| V. | § | |
| | § | |
| H. BEN TAUB, KITCHCO REALTY, · | § | |
| LTD., METCO REALTY, LTD., | § | |
| TEXAN LAND AND CATTLE II | § | |
| LTD. AND MATTHEW WILLIAM | § | |
| HUDSON | § | HARRIS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION IN CONDEMNATION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Harris County Flood Control District, a body corporate and politic under the laws of the State of Texas vested with the power of eminent domain, files this Original Petition for Statutory Condemnation, pursuant to Chapter 21 of the Texas Property Code, complaining of:

Defendant/Condemnee H. BEN TAUB, an individual, who may be served with notice by serving his attorney, H. Dixon Montague, VINSON & ELKINS, LLP, 1001 Fannin, Suite 2500, Houston, Texas 77002, via Personal Service.

Defendant/Condemnee KITCHCO REALTY, LTD., a Texas limited partnership, which may be served with notice by serving its attorney, H. Dixon Montague, VINSON & ELKINS, LLP, 1001 Fannin, Suite 2500, Houston, Texas 77002, via Personal Service.

Defendant/Condemnee METCO REALTY, LTD., a Texas limited partnership, which may be served with notice by serving its attorney, H. Dixon Montague, VINSON & ELKINS, LLP, 1001 Fannin, Suite 2500, Houston, Texas 77002, via Personal Service.

Defendant/Condemnee TEXAN LAND AND CATTLE II LTD., a Texas limited partnership, which may be served with notice by serving its attorney, H. Dixon Montague, VINSON & ELKINS, LLP, 1001 Fannin, Suite 2500, Houston, Texas 77002, via Personal Service.

(Defendants), Plaintiff would show the Court the following:

### I.

This is a Level 2 case for purposes of discovery.

**7**

## II.

Defendants are the owners or other parties that may have an interest in the real property located in Harris County, Texas, and described in Exhibit "A" attached hereto and incorporated herein by reference as if copied verbatim, (the Property.) The Property is Tract or Parcel 01-001.0 of the Deer Park Detention Basin Project in Precinct 2 of Harris County, Texas.

## III.

The Commissioners Court of Harris County, Texas, the governing body of Harris County Flood Control District, passed an Order declaring the public necessity for acquiring the fee simple title to the Property and all improvements thereon the Property and authorizing the filing of this condemnation suit by the County Attorney.

The acquisition of the Property is required for the location, alignment, construction, operation and maintenance of the public project known as the Deer Park Detention Basin. All conditions precedent for the acquisition of the Property and the interests described in this petition have been performed or have occurred.

## IV.

Plaintiff and defendants, are unable to agree upon the value of the Property and/or damages, if any, to the remainder of defendant's property by reason of this condemnation. Therefore, it has become necessary for plaintiff to institute this proceeding.

## V.

Plaintiff has provided the property owner with the landowner's bill of rights statement in accordance with Section 21.0112 of the Texas Property Code.

8

## II.

Defendants are the owners or other parties that may have an interest in the real property located in Harris County, Texas, and described in Exhibit "A" attached hereto and incorporated herein by reference as if copied verbatim, (the Property.) The Property is Tract or Parcel 01-001.0 of the Deer Park Detention Basin Project in Precinct 2 of Harris County, Texas.

## III.

The Commissioners Court of Harris County, Texas, the governing body of Harris County Flood Control District, passed an Order declaring the public necessity for acquiring the fee simple title to the Property and all improvements thereon the Property and authorizing the filing of this condemnation suit by the County Attorney.

The acquisition of the Property is required for the location, alignment, construction, operation and maintenance of the public project known as the Deer Park Detention Basin Project. All conditions precedent for the acquisition of the Property and the interests described in this petition have been performed or have occurred.

## IV.

Plaintiff and defendants, are unable to agree upon the value of the Property and/or damages, if any, to the remainder of defendant's property by reason of this condemnation. Therefore, it has become necessary for plaintiff to institute this proceeding.

## V.

Plaintiff has provided the property owner with the landowner's bill of rights statement in accordance with Section 21.0112 of the Texas Property Code.

9

## VI.

Plaintiff does not seek to condemn any of the oil, gas, sulphur and other minerals in, to, or under the Property, but, plaintiff does seek to condemn any right, if any, defendants have to explore, develop, drill, mine, operate or produce oil, gas, sulphur and other minerals on or from the surface of the Property; defendants will be permitted to extract oil, gas and sulphur from and under the Property by directional drilling or other means from property located outside the boundaries of the Property, so long as plaintiff's use of the Property is not disturbed, and the facilities located and to be located on the Property and the public's use of the Property are not obstructed, endangered or interfered with.

WHEREFORE, Plaintiff prays that:

1. three disinterested freeholders, residing in Harris County, Texas, be appointed Special Commissioners;
2. upon the payment of the amount of the Award of Special Commissioners to the defendant or the deposit of that amount into the Registry of the Court, plaintiff have its writ of possession;
3. upon final judgment, plaintiff be declared the owner of the interest in the property described in this petition; and
4. plaintiff be awarded court costs and such other relief as the court deems appropriate.

Respectfully submitted,

VINCE RYAN  999999939
COUNTY ATTORNEY

By: _____
George A. Nachtigall
Sr. Assistant County Attorney
SBN 14774500
1310 Prairie, Suite 940
Houston, Texas 77002
(713) 755-8278 (Phone)
(713) 755-2681 (Fax)
ATTORNEYS FOR HARRIS COUNTY FLOOD
CONTROL DISTRICT

FILED
2010 JAN 29 AM 10: 40
COUNTY CLERK
HARRIS COUNTY, TEXAS

**10**

LEGAL DESCRIPTION
42.8203-ACRE TRACT OF LAND

Description of a 42.8203-acre (1865252.83 sq. ft.) tract of land located in the George M. Patrick Survey, Abstract 624, being out of that called 103.607 acre tract as recorded in Harris County Clerk's File No's. E473223-25(Tr-1), K729814, X657282, P024315(Tr-1), S262009(Tr-1), U342242(Tr-1), Texas and being more particularly described by metes and bounds as follows: all bearings are based on the Texas State Plane Coordinate System South Central Zone.

**COMMENCING** at a ¾-inch iron rod found in the East right-of-way line of Luella Avenue (60' wide) being a cut back corner of a called 8.7267 acre tract as recorded in Harris County Clerk's File No. H315169 and the Northwest corner of a called ninety-five (95) foot wide tract of City of Deer Park as recorded in Harris County Clerk's File No. F748929 and G516629 from which a 1" iron pipe found bears North 49°41'07" West 1.88 feet.

THENCE South 46° 27' 54" East a distance of 85.86 feet (call 85.61 & 86.10) along the common line of said called 8.7267 acre tract and of said "95' wide tract" to a ¾-inch iron rod found for a common corner of the said 8.7267 acre tract and of said "95' wide tract";

THENCE North 86° 52' 17" East a distance of 580.45 feet (call 580.32) along the common line of said called 8.7267 acre tract and of said "95' wide tract" to a point for corner (N 13825411.0777, E 3202597.3973) in the East line of Deer Park Outlot 2-1/2 as recorded in Volume 65, Page 177 Harris County Deed Records for the **POINT OF BEGINNING** an interior corner of the herein described tract, being a four (4) way corner; the Southeast corner of said called 8.7267 acre tract, the Northeast corner of said "95' wide tract" and the Northwest corner of a one hundred forty (140) foot wide drainage channel as recorded in Harris County Clerk's File No. G639672 (Tr-2) from which a found ¾ inch iron rod bears North 09°23'39" West 1.42 feet:

THENCE North 03° 00' 58" West along the East line of said called 8.7267 acre tract also being the said East lines of Deer Park Outlot 2-1/2, Outlot 1-1/2 and a fifty (50) foot wide right-of-way as recorded in Volume 65, Page 177 Harris County Deed Records all in the common West line of the herein described tract of land, at a distance of 21.06 feet passing the common corners of said Outlots 2-1/2 and 1-1/2, at a distance of 480.41 passing the common Northeast corner of said Outlot 1-1/2 and of said called 8.7267 acre tract also being the Southwest corner of said "50' wide right-of-way", continue for a total distance of 533.68 feet to a found ¾ inch iron rod for the Northeast corner of said "50' wide right-of-way" and the Northwest corner of the herein described tract of land being in the South line of Southern Pacific Railroad one hundred (100) foot wide tract as recorded in Volume 82, Page 272 Harris County Deed Records;

**Exhibit "A"**

**11**

THENCE South 72° 49' 58" East along the South line of said Southern Pacific Railroad at a distance of 1425.92 feet passing a found ¾ inch iron rod continue for a total distance of 1427.11 feet to a point for the Northwest corner of a called 35.64 acre tract as recorded in Volume 2335, Pages 72-77 Harris County Deed Records and the Northeast corner of the herein described tract of land;

THENCE South 02° 59' 58" East along the common line of said called 35.64 acre tract and the herein described tract of land a distance of 1275.33 feet to a point for the Southwest corner of said called 35.64 acre tract and the Southeast corner of the herein described tract of land in a North line of said "140' wide drainage channel" from which a found ¾ inch iron rod bears North 43°25'22" West 2.11 feet;

THENCE South 86° 58' 02" West along the said North line of "140' wide drainage channel" a distance of 1199.11 feet to a point for an interior corner of said "140' wide drainage channel" and the Southwest corner of the herein described tract of land from which a found ¾ inch iron rod bears North 09°39'28" East 1.52 feet;

THENCE North 03° 00' 58" West along a East line of said "140' wide drainage channel" a distance of 1234.38 feet to a the most Northerly Northeast corner of said "140' drainage channel" and a interior corner of the herein described tract of land from which a found ¾ inch iron rod bears North 04°43'33" West 1.37 feet

THENCE South 86° 59' 06" West along the most Northerly North line of said "140' wide drainage channel" a distance of 140.00 feet to the **POINT OF BEGINNING** containing 42.8203-acre (1865252.83 sq. ft.) of land:

Robert J. Armitage
Registered Professional Land Surveyor No.5685
AMANI ENGINEERING, Inc.
8313 Southwest Freeway, Ste 350
Houston, Texas 77074

8-8-08

**Exhibit "A"**

**12**



## NO. 955,392

| | | |
|---|---|---|
| HARRIS COUNTY FLOOD CONTROL DISTRICT | § § § | IN THE COUNTY CIVIL COURT |
| VS. | § § | AT LAW NO. 2 OF |
| H. BEN TAUB, KITCHCO REALTY, LTD., METCO REALTY, LTD., AND TEXAN LAND AND CATTLE II, LTD. | § § § | HARRIS COUNTY, T E X A S |

<u>S/C</u>

### <u>JURY CHARGE</u>

**LADIES AND GENTLEMEN OF THE JURY:**

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experience with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1.      Do not let bias, prejudice or sympathy play any part in your decision.

2.      Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

1

US 2908670v.1

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. Unless otherwise instructed, the answers to the questions must be based on the decision of at least 5 of the 6 jurors. The same 5 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 5 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

2

US 2908670v.1

## JURY INSTRUCTION NO. 1

### Market Value

You are instructed that "market value" means the price that the property would bring when it is offered for sale by one who desires to sell, but is not obligated to sell, and is bought by one who desires to buy, but is under no necessity to buy, taking into consideration all uses to which the property is reasonably adaptable and for which it either is or in all reasonable probability will become available in the marketplace within the reasonably foreseeable future, and considering the highest and best use of the property.

3

US 2908670v.1

1197

## JURY INSTRUCTION NO. 2:

### Highest and Best Use

You are instructed that "highest and best use" means the reasonably probable and legal use of property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value.

4

US 2908670v.1

## JURY INSTRUCTION NO. 3

### Project Influence Rule

In determining the market value of the Owner's 42.741 acres property as of July 28, 2010, you shall not consider any influence on the market value of the Owner's property that resulted from Harris County Flood Control District's detention project for which the property was taken.

You shall determine its market value as of July 28, 2010, as if there was no Harris County Flood Control District's detention project or any likelihood of such detention project.

5

US 2908670v.1

## JURY QUESTION NO. 1

What do you find from a preponderance of the evidence was the market value of the Property Owner's 42.741 acre (1,861,798 square feet) property as of July 28, 2010?

Answer in dollars and cents.

ANSWER:     $_____11,636,238_____

US 2908670v.1

**1200**

## CHARGE OF THE COURT

1.    When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2.    The presiding juror has these duties:

    a.  have the complete charge read aloud if it will be helpful to your deliberations;

    b.  preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

    c.  give written questions or comments to the bailiff who will give them to the judge;

    d.  write down the answers you agree on;

    e.  get the signatures for the verdict certificate; and

    f.  notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

### INSTRUCTIONS FOR SIGNING THE VERDICT CERTIFICATE:

1.    Unless otherwise instructed, you may answer the questions on a vote of 5 jurors. The same 5 jurors must agree on every answer in the charge. This means you may not have one group of 5 jurors agree on one answer and a different group of 5 jurors agree on another answer.

2.    If 5 jurors agree on every answer, those 5 jurors sign the verdict.

If all 6 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3.    All jurors should deliberate on every question. You may end up with all 6 of you agreeing on some answers, while only 5 of you agree on other answers. But when you sign the verdict, only those 5 who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

_____
THERESA W. CHANG
Judge Presiding

DATE AND TIME SIGNED: _____ 9:32 AM September 23, 2014

7

US 2908670v.1

**1201**

# VERDICT CERTIFICATE

___✓___ Our verdict is unanimous. All 6 of us have agreed to each and every answer. The presiding juror has signed the certificate for all 6 of us.

_____          _____Karen Strahan_____
PRESIDING JUROR (Signature)                PRESIDING JUROR (Print Name)


**OR**


_____ Our verdict is not unanimous. Five of us have agreed to each and every answer and have signed the certificate below.

**SIGNATURE**                              **NAME PRINTED**

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

8

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

US 2908670v.1

FILED 2014 SEP 24 AM 8:42

**1202**

NO. 955,392

| | | |
|---|---|---|
| HARRIS COUNTY FLOOD CONTROL DISTRICT | § § § | IN THE COUNTY CIVIL COURT |
| VS. | § § | AT LAW NO. 2 OF 5\C |
| H. BEN TAUB, KITCHCO REALTY, LTD., METCO REALTY, LTD., AND TEXAN LAND AND CATTLE II, LTD. | § § § § | HARRIS COUNTY, T E X A S |

## FINAL JUDGMENT

BE IT REMEMBERED that on this day came on to be heard the above-entitled and numbered cause, and came Harris County Flood Control District (the "District"), as Plaintiff, and H. Ben Taub, KitchCo Realty, Ltd., MetCo Realty, Ltd., and Texan Land and Cattle II, Ltd. ("Defendants"), as Defendants, and all announced ready for trial.

I.

Prior to the commencement of the trial of this cause, Defendants admitted and stipulated in open Court that the District has the right to recover and condemn a 42.741 acre tract of land, more or less, that is the subject of this condemnation case, the size of which was proven at trial by a signed and sealed survey admitted in evidence with no objection. However, in the District's Condemnation Petition, it provides for a slightly larger tract, being 42.8203 acres, more or less. The Defendants have agreed and stipulated that for purposes of this Judgment that the condemned property may be described as a 42.8203 acre tract, more or less, which is more particularly described in Exhibit "A", attached hereto and referred to herein as the "Property". Further, the Parties agreed and stipulated that all prior steps to condemn were duly, legally and timely performed; that all legal prerequisites for the trial of this cause were duly complied with; that this Court has jurisdiction to grant the District the relief it is requesting in its Petition; and that the only issue remaining in this cause to be tried by this Court was the amount of just compensation due Defendants as a result of the condemnation of the Property.

US 3009474v.1

**1207**

## II.

From the papers heretofore filed in this cause and based on the pleadings, the legal rulings made by the Court, the stipulations and agreements made between the Parties, the evidence introduced at trial, and the jury's verdict, the Court finds as follows:

(1)  The District seeks to acquire the fee simple title in and to the Property for the location, alignment, construction, operation and maintenance of the public project known as the Deer Park Detention Basin (the "Project"), save and except the oil, gas, sulphur and other minerals in, under, and below the surface of the Property, which the District agrees may be extracted and removed by directional drilling, mining, or other means so long as District's use of the Property is not unreasonably disturbed, and the facilities located on the Property, and the function for which they are intended to serve, are not interfered with, obstructed, or endangered in any way. The condemnation of the Property is for a public use.

(2)  An Award of $9,000,000.00 was made by the Special Commissioners in this case as the compensation due Defendants for the taking of the Property, and on July 28, 2010, the amount of the Award was deposited by the District in the Court's Registry, thus establishing the "date of taking" for purposes of determining just compensation at trial. This amount was withdrawn from the Court's registry by the Defendants before trial.

(3)  On September 4, 2014, this case came on for trial and a qualified jury of six persons was properly empanelled and duly sworn to serve in this case. The Defendants and the District presented their evidence regarding the compensation issue for the market value of the Property taken as of July 28, 2010, after which the parties rested and argued their respective positions to the jury. One compensation question was submitted to the jury in accordance with the evidence and the law applicable thereto, which read as follows:

- 2 -

US 3009474v.1

## JURY QUESTION NO. 1

What do you find from a preponderance of the evidence was the market value of the Property Owner's 42.741 acre (1,861,798 square feet) property as of July 28, 2010?

On September 23, 2014, in response to Jury Question No. 1, the jury returned a verdict of $11,636,238.00 as the total amount of compensation to which Defendants are entitled, measured by the market value of the Property taken by the District as of the "date of taking." On Defendants' motion, the verdict was accepted by the Court and duly filed and entered among the records of the Court. The jury's verdict exceeds the Special Commissioners' Award by $2,636,238.00.

(4)    The Court is of the opinion that judgment should be entered on the jury's verdict, and that Defendants recover from the District the amount of such verdict, costs of court, pre-judgment interest at the rate of 5.0% per annum from July 28, 2010 through the date of judgment on the $2,636,238.00 amount, and post-judgment interest at 5% per annum, compounded annually, thereafter on the entire balance provided in this Judgment that remains unpaid.

(5)    The amount of pre-judgment interest to which Defendants are entitled from July 28, 2010 to October 21, 2014, is $557,945.85, and $361.13 per day thereafter if judgment is entered after October 21, 2014.

(6)    After accounting for pre-judgment interest, Defendants are entitled to compensation in the amount of $12,194,183.85 as of October 21, 2014, plus costs of court, and $361.13 per day thereafter if Judgment is not entered on October 21, 2014.

(7)    The District is entitled to a $9,000,000.00 credit on the judgment for the amount of the Special Commissioners' Award the District deposited previously in the Court's Registry for Defendants' use and benefit and that the Defendants have withdrawn, leaving a balance owed

- 3 -

US 3009474v.1

to Defendants of $3,194,183.85, plus court costs, as of October 21, 2014, and $361.13 per day thereafter if Judgment is not entered on October 21, 2014. The remaining balance owed shall be paid by the District directly and jointly to the Defendants and their attorneys of record, and **not** by deposit in the Court's Registry.

(8) All costs of Court incurred herein shall be taxed against the District, which costs, as they pertain only to Defendants, shall be paid by the District directly and jointly to Defendants and their attorneys of record upon filing a Bill of Costs with the Clerk. Any other costs of court should be paid into the Court's registry. The Defendants' costs of Court should be submitted in a cost bill to the clerk of Court within thirty days of the filing of this Judgment. The District shall pay all court costs to Defendants within thirty (30) days of the filing of a Bill of Costs with the Court, and if not paid, interest on the Bill of Costs shall accrue at 5% per annum, compounded annually, from the date of this Final Judgment until paid in full.



(9) The District shall pay post-judgment interest to Defendants on the $3,194,183.85 balance owed Defendants, or such other amount as provided in this Final Judgment if entered after October 21, 2014, at the rate of 5.0% per annum, compounded annually, from the date of this Judgment until paid in full directly and jointly to the Defendants and their attorneys of record as provided herein.

(10) Upon payment of the Judgment, along with all pre- and post-judgment interest and costs of court, the District shall have and recover from Defendants fee simple title in and to the Property for the purposes for which it was condemned, save and except the minerals as previously provided herein.

III.

Based on the foregoing, it is:

- 4 -

US 3009474v.1

**1210**

ORDERED that the District have and recover from H. Ben Taub, KitchCo Realty, Ltd., MetCo Realty, Ltd., and Texan Land and Cattle II, Ltd. fee simple title in and to the Property situated in Harris County, Texas, as more particularly described in Exhibit "A" attached hereto and incorporated herein for those purposes stated in the District's Condemnation Petition, save and except the oil, gas, sulphur, and other minerals which can be removed from the Property, so long as it is done by directional drilling or other means from property located outside the boundaries of the Property, and the District's use of the Property is not interfered with, obstructed, endangered in any way and, accordingly, the Court does hereby vest fee title in the Property to the District, subject to the exception above, upon satisfaction of this Judgment;

ORDERED that Defendants have and recover from the District $11,636,238.00 for the Property condemned, plus all pre-judgment and post-judgment interest as provided herein, plus costs of court, for which let execution issue if not timely paid;

ORDERED that the District is entitled to a $9,000,000.00 credit on the judgment amount for monies previously deposited in the Court's Registry for the benefit of Defendants, leaving an unpaid balance owed to Defendants of $3,194,183.85 for the Property, which includes $557,945.85 in pre-judgment interest at the rate of 5% per annum from July 28, 2010 to October 21, 2014, or such additional amount of $361.18 per day, plus interest, if Judgment is entered after October 21, 2014;

ORDERED that post-judgment interest shall accrue on all unpaid amounts as provided in this Judgment at the rate of 5% per annum, compounded annually, until paid in full;

ORDERED that the amount of $3,194,183.85 (or such additional amount as provided above), plus costs of court and post-judgment interest, shall be paid by the District directly and jointly to Defendants and their attorneys of record, VINSON & ELKINS LLP, by delivery of a

- 5 -

US 3009474v.1

check or warrant, plus Defendants' court costs referenced above, to H. Dixon Montague, VINSON & ELKINS LLP, 1001 Fannin Street, Suite 2500, Houston, Texas 77002-6760, no later than thirty (30) days after entry of this Final Judgment, and until paid directly as provided herein, this judgment shall not be satisfied and interest shall continue to run on any unpaid amounts at the rate of 5% per annum, compounded annually, until paid in full;

ORDERED that upon payment by the District of the Judgment amount provided herein, including all costs of court, and all pre- and post-judgment interest, the County shall stand released and discharged of its constitutional obligation to pay just compensation to Defendants for the Property acquired in this condemnation proceeding, and shall be vested with fee simple title to the Property condemned, as described in Exhibit "A", attached hereto and incorporated herein;

ORDERED that all costs of Court be and the same are hereby adjudged against the District, and shall be paid in the manner provided above;

ORDERED that all relief not expressly granted herein is denied. This is a final judgment.

OCT 2 1 2014

SIGNED this the _____ day of October, 2014.

JUDGE, County Civil court at Law No. 2
Harris County, Texas

2014 OCT 21 PM 1:36
FILED

- 6 -

US 3009474v.1

**1212**

APPROVED AS TO FORM AND SUBSTANCE
AND FOR ENTRY:

VINCE RYAN, HARRIS COUNTY ATTORNEY

_____
Cedric Loeb
State Bar No. 12479700
Melissa L. Spinks
State Bar No. 24029432
Victoria Jimenez
State Bar No. 24060021
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: 713. 274.5142
Facsimile: 713. 437.5778

**ATTORNEYS FOR PLAINTIFF,**
**HARRIS COUNTY FLOOD CONTROL**
**DISTRICT**

VINSON & ELKINS LLP

_____
H. Dixon Montague
State Bar No. 14277700
Don C. Griffin
State Bar No. 08456975
David G. Wall
State Bar No. 24060788
1001 Fannin Street
3200 First City Tower
Houston, Texas  77002-6760
Telephone:    713.758.2086
Facsimile:    713.615.5416

**ATTORNEYS FOR DEFENDANTS,**
**H. BEN TAUB, KITCHCO REALTY,**
**LTD., METCO REALTY, LTD., AND**
**TEXAN LAND AND CATTLE II, LTD.**

- 7 -

US 3009474v.1



Harris County Flood Control District v.
H.Ben Taub, Kitchco Realty, Metco Realty, Ltd. And Texan Land and Cattle II Ltd.

# Alan L. Dominy, MAI, SRA

**Indicated Value with Road Access  $3,730,506.00**
**Estimated Road & Bridge Cost        -1,150,000.00**

# Market Value:        $2,580,506.00

PLAINTIFF'S
EXHIBIT
PX 16
955,392

Following is a summary of land sale transactions which were employed in the sales comparison approach. You will also find a land sale map indicating the location of the comparables relative to subject. The land sale value estimate has been incorporated within the cost approach section.

| \*LAND SALES SUMMARY \* | | | | | |
|---|---|---|---|---|---|
| No. | Sale Date | Location | Size (Acres) | Sale Price/SF | |
| 1 | 1/21/2011 | Bay Area Blvd., S. of Fairmont Pkwy. | 80.972 | $ | 1.98 |
| 2 | 10/27/2010 | SEC S.H. 225 and Sens Road | 15.780 | $ | 2.50 |
| 3 | 5/25/2010 | S/S St. Augustine, W. of Underwood Rd. | 12.3275 | $ | 2.23 |
| 4 | 5/16/2008 | S/S S.H. 225, E. of Beltway 8 | 149.90 | $ | 2.05 |
| 5 | 5/16/2008 | SWC Underwood Rd. @ Aaron St. | 24.3564 | $ | 2.00 |
| 6 | 1/17/2007 | NEC Red Bluff Rd. @ Bay Area Blvd. | 137.17 | $ | 2.00 |
| 7 | 2/13/2007 | W/S Bay Area Blvd., S. of Fairmont Pk. | 87.907 | $ | 1.34 |
| 8 | 1/12/2007 | SEC Fairmont Pkwy. at Underwood Rd. | 41.7070 | $ | 1.82 |
| 9 | 7/30/2010 | NS S.H. 225, W. of Sens Rd. | 25.3028 | $ | 3.67 |

*\* COMPLETE SALE DETAILS / PHOTOS PRESENTED IN ADDENDA SECTION OF REPORT.\**


PLAINTIFF'S EXHIBIT
17a
tabbies

# MARK SIKES' MARKET VALUE OF
# THE WHOLE PROPERTY

Property Size in Square Feet:                                    1,861,798 S.F.
(42.741 Acres)

Market Value Estimate Per Square Foot:                  x         $ 6.25/S.F.

Land Value Estimate:                                                $ 11,636,238

**Market Value of Whole Property as of July 28, 2010:        $ 11,636,238**



DEFENDANT'S
EXHIBIT
1

# Mark Sikes' Land Comparables
## ($6.25 PSF for 42.741 Acres as of July 28, 2010)



# Mark Sikes' Adjustment Grid

| | Qualitative Adjustment Grid | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| No. | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| Date | 10/29/2010 | 7/30/2010 | 3/22/2010 | 4/23/2009 | 12/30/2008 | 5/16/2008 | 1/7/2008 | 12/17/2007 | 9/17/2007 | 3/19/2007 |
| Size in Ac. | 15.780 | 25.303 | 56.519 | 8.718 | 1.900 | 149.905 | 2.231 | 99.26 | 22.056 | 7.923 |
| Price/SF | $2.50 | $3.67 | $4.50 | $2.79 | $6.44 | $2.05 | $7.42 | $5.00 | $3.40 | $3.75 |
| Distance from Subject | 4.00 | 3.15 | 0.00 | 0.00 | 0.00 | 2.00 | 0.75 | 0.00 | 2.75 | 1.15 |
| Property Rights | C | C | C | C | C | C | C | C | C | C |
| Financing | C | C | C | C | C | C | C | C | C | C |
| Conditions of Sale | C | I | C | C | C | C | C | C | C | C |
| Market Conditions | C | C | C | C | C | C | C | C | C | C |
| Location | S | S | I | I | C | S | S | C | S | S |
| Use | I | I | I | I | C | I | S | C | I | I |
| Physical Characteristics | I | I | C | I | S | I | S | I | I | I |
| **Overall Comparison** | I | I | I | I | S | I | S | I | I | I |



DEFENDANT'S
EXHIBIT
21